A08A0863. SILMAN et al. v. ASSOCIATES BELLEMEADE et al.

(669 SE2d 663)

BARNES, Chief Judge.

In July 2004, Merdean Silman was standing on the back deck of a house rented by Lamar and Nancy Scott when the deck fell. She sued the Scotts for damages resulting from personal injury, and her husband, Samuel Silman, sued for loss of consortium. The Silmans also sued the property owner, Associates Bellemeade, and the property management company, McCreary Realty Management, Inc. ("Bellemeade"). Bellemeade moved for summary judgment, arguing it had no notice the deck was defective, and Silman moved for sanctions, arguing that Bellemeade destroyed the deck despite knowing that litigation would ensue. The trial court granted summary judgment to Bellemeade and denied Silman's motion for sanctions. For the reasons that follow, we affirm.[1]

1. On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

2. Silman contends that Bellemeade is liable for her injuries because it undertook to inspect the property and therefore is charged with notice of defects it saw or should have seen. As a social guest in the Scotts' private home, Silman was a licensee, and thus the Scotts would be liable to her only for injuries caused by wilful or wanton conduct. *Trulove v. Jones*, 271 Ga. App. 681 (610 SE2d 649) (2005); OCGA § 51-3-2. As to the landlord, however, Silman was an invitee and Bellemeade is liable to her for injuries caused by Bellemeade's failure to exercise ordinary care to keep the property safe and protect her from known risks. OCGA § 51-3-1. While not an insurer, the owner must be diligent in making the premises safe. *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997). The owner's liability depends on his superior knowledge of the danger, which is unknown to his guest. *Moore v. ECI Mgmt.*, 246 Ga. App. 601, 602-603 (542 SE2d 115) (2000). While a landlord is not responsible to guests for damages caused by a tenant's negligence, he is "responsible for damages arising from defective construction or . . . from the

---

[1] The case remains pending against the Scotts.

failure to keep the premises in repair." OCGA § 44-7-14. Additionally, if the landlord undertakes to inspect the property, he has a duty to repair any unsafe conditions which should have been discovered during the inspection. *Home Owners Loan Corp. v. Brazzeal*, 62 Ga. App. 683, 692 (9 SE2d 773) (1940). In this case, Silman has not shown that the landlord failed to keep the premises in repair or should have discovered upon inspection that the deck was going to fall.

Bellemeade's agent provides third-party leasing and management services for property owners. It inspects each property annually, to determine whether the tenant is maintaining the property and to look for anything that needed fixing, such as broken kitchen cabinets, leaky faucets, or missing screens. The inspection included walking on the deck and inspecting its surface.

The property where Silman fell was a duplex, built around 1980. The deck was built before the current owner bought the property. Bellemeade had inspection reports and work orders back to 1999, when it began managing the property. Bellemeade's contractor replaced the deck stairs "probably the year before" the deck fell because the wood had begun to deteriorate, and also secured the railing with screws, replaced some deck boards, and added four-by-four pressure-treated posts along the outside edge of the deck, tasks Bellemeade described as routine maintenance. The posts were added to provide additional support "for overkill . . . [j]ust to make sure," not in response to any particular problem.

In 2002, Bellemeade's contractor inspected the deck and thought it was structurally sound. Typically during annual inspections he bounced or rocked on decks to discern any reflection or deflection, and, being 260 pounds, any structural problems were usually evident immediately. Bellemeade's contractor inspected the property in March 2004, and noted no problems with the deck. In May 2004, a City of Marietta inspector examined the property for safety in response to a local ordinance, with a representative of Bellemeade in attendance. The inspector examined the deck above and below and found no potential problems with the structure. The tenant reported no problems with the deck, and the management company knew of no problems with the deck or its support structures.

Photographs taken the day after the deck fell showed that the deck's ledger board had been attached to the house using railroad spikes, which are essentially very large nails. Two-by-four posts on footings supported the ledger board and were nailed to the concrete block foundation of the house. When the deck fell, the steps cracked at their base, and pictures showed that the boards on top of the deck had broken in the middle. The siding was discolored above where the deck had been and appeared to have some water damage. The

contractor who removed the old deck saw no rot or mold on the deck, although the siding had some mold, mildew, or algae on it, the growth of which could compromise the pressure-treated wood after several years. He did not know why the deck fell.

The record includes the transcript of a statement from tenant Scott to an insurance agent, in which Scott stated that the deck had felt a little wobbly earlier in the year when she and her son were both on it, and that she had warned her guests not to crowd the deck shortly before it fell because she "was not comfortable with it." Scott admitted she never told Bellemeade anything about the deck being wobbly because she did not think it was a problem. Silman argues that from this statement "it is reasonable to conclude that the deck had been wobbly" for some time and that Bellemeade had failed to inspect it thoroughly.

Pretermitting whether this transcript of an unsworn statement by the tenant is admissible as an admission against the interest of the landlord, it still does not establish that landlord had actual or constructive knowledge of a problem or failed to inspect properly. The tenant never reported any problems with the deck. Further, two inspections — four months and two months before the incident — uncovered no problems with the deck. Although Silman argued to the trial court that adding the additional four-by-four posts raised an inference that Bellemeade knew or should have known the deck was unsafe because "nobody just 'adds' support to an existing structure without suspecting something may be wrong with it," any such inference is clearly dispelled by Bellemeade's direct testimony to the contrary.

"In summary, there is no evidence that [Bellemeade] had actual or constructive knowledge of a defect in the construction or of a condition of the deck that caused [Silman's] injuries." *Wingo v. Harrison*, 268 Ga. App. 156, 160 (601 SE2d 507) (2004). Accordingly, the trial court did not err in granting summary judgment to Bellemeade.

3. Silman also contends that the trial court erred in denying her motion for sanctions against Bellemeade for spoliation of evidence. She contends that by immediately removing and demolishing the old deck, Bellemeade made it impossible for her to determine why the deck fell. Further, Bellemeade knew she and others were injured when the deck fell and therefore should have anticipated that litigation would ensue. Her experts were unable to determine from Bellemeade's pictures why the deck fell, and Silman argues she was entitled to a finding that the deck collapsed because it was improperly maintained and improperly secured to the house.

"Spoliation" is the destruction or failure to preserve evidence that is necessary to pending or contemplated litigation, and if key

evidence was destroyed, sanctions may be warranted. *Bridgestone/ Firestone &c. v. Campbell*, 258 Ga. App. 767, 768 (574 SE2d 923) (2002). Such destruction creates the presumption that the evidence would have been harmful to the spoliator. *Glynn Plymouth, Inc. v. Davis*, 120 Ga. App. 475, 482 (170 SE2d 848) (1969). The party moving for sanctions must show that the opposing party destroyed or failed to preserve evidence necessary to *contemplated* or *pending* litigation. *Strickland v. CMCR Investments*, 279 Ga. 112, 115 (1), n. 7 (610 SE2d 71) (2005); *Ga. Bd. of Dentistry v. Pence*, 223 Ga. App. 603, 608 (6) (478 SE2d 437) (1996).

In this case, Silman presents no evidence showing that litigation was pending or contemplated when Bellemeade had the deck debris removed from the Scotts' back yard. She argues that Bellemeade should have anticipated litigation because its agents "are business people who know and understand that people who are hurt by something that was not the injured person's fault will likely pursue legal avenues to recoup the costs of their injuries." Silman also argues that any safety concerns over leaving the deck pieces lying in the back yard could have been addressed by preserving them at either appellee's corporate headquarters.

During the motions hearing, the trial court responded to this argument by noting that contemplation of potential liability was not notice of potential litigation. The court noted, "A lot of times people just let things go; they fall off decks and get hurt, go get treated, and never sue anybody because it's just not something they'd do in their normal course of business." In this case, Silman did not file suit until almost two years after the fall, and nothing in the record indicates that she ever gave the defendants notice she was contemplating litigation. Thus, the trial court properly found that Silman presented no evidence that Bellemeade acted in bad faith and denied the motion for sanctions.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 21, 2008 —
RECONSIDERATION DENIED NOVEMBER 21, 2008 —

*Kevin A. Adamson*, for appellants.
*Lynn M. Leonard*, for appellees.