A09A1931. KITCHENS et al. v. BRUSMAN et al.
(694 SE2d 667)

ADAMS, Judge.

In this medical malpractice suit, the plaintiff contends the defendants spoliated evidence. The trial court disagreed, and it denied the plaintiff's motion for sanctions as a result of spoliation and granted the defendants' motion to exclude evidence of spoliation. The trial court also granted the defendants' motion to exclude two of the plaintiff's expert witnesses on the ground that their testimony regarding causation was too uncertain and speculative to be submitted to the jury. The issues are interrelated because the plaintiff seeks the benefit of an inference from spoliation in order to support the experts' opinions. We granted the plaintiff's interlocutory appeal to consider these issues.

The relevant facts are that on October 31, 1997, Jillian Kitchens went to Southern Regional Medical Center ("SRMC") with complaints of pain and swelling in her left breast. The following day, a surgeon performed an incision and drainage procedure of an abscess located at the periareolar border at the "9 o'clock" position on her left breast (where "3 o'clock" is toward the arm) and obtained a tissue sample from the abscess. On or about November 2, 1997, Dr. Harold Brusman, a pathologist, reviewed and analyzed one slide taken from the specimen. Dr. Brusman submitted a one-page written report of his findings interpreting the specimen as "fibroadipose tissue with acute and chronic inflammation and granulation tissue reaction." He has testified that his findings were consistent for that of an abscess and that there were no indications of breast cancer or

malignancy. That is still his professional opinion. Mrs. Kitchens was released from the hospital and had no further problems until 1999.

In October 1999, after experiencing symptoms for some months, Mrs. Kitchens went to Dr. Davis Scott Timbert, a breast surgeon, complaining of tenderness in the lateral aspect of her left breast from approximately the "1 o'clock" to the "4 o'clock" position (on the arm side of her areola). The area of the 1997 abscess was not of clinical concern to Dr. Timbert and he never found breast cancer there; but he did not perform a biopsy of that area because he found aggressive cancer in the lateral location. After further tests, Mrs. Kitchens was diagnosed with advanced breast cancer and later with lung cancer. Although she received treatment, she died on October 4, 2000.

On October 3, 2002, Trammell Kitchens, Jillian's husband and the administrator of her estate, brought suit against Dr. Brusman, his practice, and SRMC, on his own behalf for wrongful death and on behalf of the estate for pain and suffering. He claims that Dr. Brusman and his practice were negligent because Dr. Brusman should have detected the cancer or taken other steps to investigate suspicious cells in 1997. This Court has already affirmed summary judgment for SRMC. See *Kitchens v. Brusman*, 280 Ga. App. 163, 167 (633 SE2d 585) (2006).

1. The issue of spoliation concerns the retention of a "tissue block" or "paraffin block" made from the surgical specimen taken from Mrs. Kitchens in October 1997 and, allegedly, two extra slides, as well as retention of the laboratory policies and procedures that were in effect at that time, which, it is alleged, would show how many slides should have been made and how long the slides and tissue block should have been retained. The slide Dr. Brusman examined is still available and has been examined by Kitchens's experts. According to Kitchens, "The paraffin block labeled S97-7885 and the two missing slides are the most important evidence in this medical malpractice case" because they are the only items that can show whether cancer was present in the tissue removed from Mrs. Kitchens in November 1997. Although the trial court did not explain its order, given its rulings, we must conclude that it determined there was no spoliation of evidence attributable to Dr. Brusman or his practice.

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." (Citations and punctuation omitted.) *Bouve & Mohr, LLC v. Banks*, 274 Ga. App. 758, 762 (1) (618 SE2d 650) (2005). Accord *Silman v. Assocs. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009). "Proof of spoliation raises a rebuttable presumption against the spoliator that the evidence favored the spoliator's opponent, a fact rendering summary judgment inappropriate." (Citations and punctuation omitted.)

*Baxley v. Hakiel Indus.*, 282 Ga. 312, 313 (647 SE2d 29) (2007). See also OCGA § 24-4-22. "A trial court has wide discretion in resolving spoliation issues, and we will not disturb the court's ruling absent abuse." *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 840 (4) (678 SE2d 489) (2009). See also *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 179 (2) (539 SE2d 873) (2000).

The relevant facts are that Dr. Brusman, a pathologist, examines tissue slides and dictates reports on those slides every day and has done so for years at SRMC. As of 1997, Dr. Brusman and two or three other pathologists were members of a professional practice named South Suburban Pathologists, P. C. The practice had an exclusive contract with SRMC under which South Suburban provided pathologists and oversight of the operations of the laboratory, which was located in the hospital. The hospital provided the space, computers, equipment, and supplies, and it hired the technologists and other laboratory personnel. And it was the hospital's responsibility to find a place for storage and to handle the storage and disposal of tissue blocks and slides; hospital employees were the custodians of those items. But Dr. Ann Early, the partner in South Suburban designated as the director of the SRMC laboratory, testified that, as director, she was charged with making sure the laboratory complied with the policies and procedures of the State of Georgia as well as those of the laboratory itself, which include retention times.

On November 3, 1997, Dr. Brusman examined one slide of material taken from Mrs. Kitchens's breast tissue. The slide was made from a tissue block that was made from the gross specimen taken during the incision and drainage procedure. Additional slides could be made from the block if it were available today. The evidence in the record shows that only one slide was made at that time, although there is some conflict in the testimony as to whether the applicable procedure or practice called for three slides to be made. In addition to the one slide that Dr. Brusman saw, more than twenty other slides were created at SRMC from other tissue samples taken from Mrs. Kitchens during the course of her treatment at SRMC. For instance, on January 4, 2000, in connection with a lung biopsy slide, Dr. Brusman diagnosed Mrs. Kitchens with adenocarcinoma. At that time, he also developed the opinion that his findings of adenocarcinoma, which could have originated elsewhere in the body, would be consistent with a conclusion that the cancer originated in the breast.

In 1997, and at least through late 2002, the applicable SRMC retention policy was at least five years for blocks and ten years for slides, although those times were doubled as of November 2002. Thus, the block should have been retained at least through November 2002, and any possible extra slides for much longer. The blocks were kept in the storeroom in numerical order, which amounted to

the same thing as date order. After the appropriate number of years, blocks were discarded in batches when the storage area became full; all items older than a certain date would be discarded, but no record was kept of which items were actually discarded.

From time to time, the pathology laboratory received requests to view patient slides from patients, doctors, attorneys, and other institutions, and there was a procedure for checking out the slides that involved the pathologist that handled the case. On August 14, 2002, Mr. Kitchens's attorney appeared at the hospital and presented the secretary of the pathology department with a request for Mrs. Kitchens's slides but not for any blocks. In accordance with the checkout procedure, the secretary gathered all of Mrs. Kitchens's slides from her history at SRMC and took them to Dr. Brusman for review so that he could choose the material to be forwarded; the attorney waited at the secretary's desk. Dr. Brusman selected a total of twenty-two slides — including the one slide that he had reviewed on November 3, 1997, and twenty-one others from later dates. He then brought them back to the secretary's desk, and they were given to the attorney. No evidence has been cited concerning any discussion that may have occurred during that exchange.

On October 7 and 8, 2002, SRMC and Dr. Brusman, respectively, were served with the plaintiff's lawsuit. Dr. Brusman testified that service of the lawsuit was the first time that he became aware of a concern about Mrs. Kitchens's pathology slides. He also testified that sometime later on the day he was served, he went to the pathology lab to locate Mrs. Kitchens's slides. After he could not find them, the pathology secretary told him that Mr. Kitchens's attorney still had them. The secretary then went to look for the block and could not find it; she reported it to Maria Winn, the SRMC histology lab supervisor, who also searched for but could not find the block, even though her department was responsible for retention and disposal of tissue blocks.

In fact, all of the blocks older than the one requested were gone; it is not known how many, if any, blocks newer than that block were missing. Despite extensive discovery, no one has been found with personal knowledge of what happened to the block or when. The defendants contend it must have been discarded accidentally in an over-inclusive attempt to discard blocks more than five years old, but there is no direct evidence to support that theory.

Thus the evidence shows that the block was not retained for the full retention period provided by hospital policy and that it was missing as of October 8, 2002, within the retention time but after suit was filed, and after both SRMC and Dr. Brusman had been served. The evidence also shows that pathologists, including Dr. Brusman, had access to these materials in the lab or in the store-

room. Dr. Brusman has been in the storeroom; he admitted the room is not locked and that he may have pulled a block on his own in the past. And he had the authority to take steps to protect specific materials if he had a need to do so.

(a) Georgia law allows a finding of spoliation if the loss of the evidence occurs at a time when there is "contemplated or pending litigation." *Bouve & Mohr*, 274 Ga. App. at 762 (1). Here, the evidence related to time of loss is that (1) the block was found to be missing on October 8, 2002, after suit was filed and after SRMC and Dr. Brusman had both been served, (2) all of the blocks older than the one requested were gone, (3) hospital employees are responsible for the actual disposal of blocks, but (4) pathologists have access to the blocks, and they are ultimately responsible for compliance with storage policies and procedures. Moreover, the block turned up missing almost three months after Mr. Kitchens's attorney asked to see all of the slides regarding Mrs. Kitchens's care at SRMC. At that time, Dr. Brusman determined what slides should be given to the attorney and gave the attorney 22 slides. Thus, as of August 14, 2002, Dr. Brusman was aware that an attorney was looking at all of the slides, both those from 1997 and from 1999 and 2000, which showed cancer.

First, the defendants find refuge in the argument that the block turned up missing on the same day that Dr. Brusman was served with the suit. Nevertheless, Dr. Brusman was served with the suit first. The simple fact is that the block was found missing while the lawsuit was pending and after SRMC and Dr. Brusman were served, not before. The case would be different if the hospital had evidence that the items had been discarded or lost some time earlier. But pretermitting this issue, we conclude that Dr. Brusman was already on notice of "contemplated litigation."

We have held that contemplation of potential *liability* is not notice of potential litigation. *Silman v. Assocs. Bellemeade*, 294 Ga. App. 764, 767 (669 SE2d 663) (2008). In *Silman*, the Supreme Court affirmed this Court's decision and explained that a simple "potential for litigation" is not enough. *Silman v. Assocs. Bellemeade*, 286 Ga. at 28. Compare *Wal-Mart Stores v. Lee*, 290 Ga. App. 541 (659 SE2d 905) (2008) (the "threat of a lawsuit" in a demand letter can be enough "to put a party on notice that potentially relevant evidence should be preserved"). For instance, *Silman* held that the simple fact that someone is injured in an accident, without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation. *Silman*, 294 Ga. App. at 767 (3). Compare *Baxley*, 282 Ga. at 313 (manager was aware of customer's involvement in accident and took steps to investigate immediately thereafter, yet failed to preserve recording of pertinent events).

In *Silman,* a deck was destroyed shortly after it fell and caused injuries to a visitor. *Silman,* 294 Ga. App. at 765. This Court first explained that there was no evidence the landlord failed to keep the premises in repair or that it should have discovered problems with the deck. Id. Therefore, although the landlord destroyed the deck after the accident, the trial court did not abuse its discretion by denying sanctions for spoliation because, without more, the deck accident was not enough to put one on notice of "contemplated litigation." Id. at 767.

But here, unlike *Silman,* there is evidence of more than a potential for litigation. In this case, a lawyer was already investigating and asking for Mrs. Kitchens's medical records, including all of the slides reviewed by the pathologists concerning her condition from 1997 forward. And at the time of the request, Dr. Brusman knew that in January 2000 he had suspected Mrs. Kitchens's cancer had originated in her breast yet he had determined there was no cancer in her left breast in November 1997.

"Contemplated" has been defined as "to view as contingent or probable or as an end or intention";[1] "contemplate" has been defined as "to have in mind as a possibility or plan; expect or intend";[2] and "contemplation" has been defined as "[c]onsideration of an act or series of acts with the intention of doing or adopting them."[3] It is true that Mr. Kitchens had not sent a demand letter and there is no evidence of any conversation between Dr. Brusman and Mr. Kitchens's attorney. But we conclude the above facts were sufficient to put a reasonable doctor on notice that Mr. Kitchens had litigation in mind as a possibility or plan in connection with his wife's care at SRMC. This is especially true given the tone of the discourse regarding medical malpractice cases in this country in recent years.

(b) Dr. Brusman also argues that hospital employees were responsible for storage and disposal of the tissue blocks. But the doctrine of spoliation can be applied against a party for the destruction of evidence by a second party where the second party was acting as an agent for the first party.[4] And there is evidence that hospital

---

[1] *Merriam-Webster's Online Dictionary.*

[2] *Webster's New World Dictionary,* 3rd College Ed. 1988, p. 300.

[3] *Black's Law Dictionary,* 5th Ed. (abridged), 1983, p. 167.

[4] See, e.g., *Bouve & Mohr,* 274 Ga. App. at 762 (1) (off-duty officer "served as [apartment complex's] agent when he destroyed evidence in bad faith"); *R. A. Siegel Co.,* 246 Ga. App. at 177 (spoliation presumption allowed against defendant where defendant's insurance company allowed vehicle to be sold during pendency of suit despite an order to preserve it). Compare *Boswell v. Overhead Door Corp.,* 292 Ga. App. 234, 235-236 (664 SE2d 262) (2008) (spoliation presumption cannot be used against a party who did not destroy the item where there was nothing to suggest that the destroyer was acting at the behest of the first party). In our earlier opinion, we held that SRMC could not be held vicariously liable for Dr. Brusman's actions

employees could be seen as agents of South Suburban for the purposes of ensuring compliance with the five-year retention policy.[5] We need not decide that issue, however, because we have already found that the evidence turned up missing almost three months after the defendants should have been aware of contemplated litigation and that the pathologists had access to and could have preserved tissue specimens at any time.

(c) For the above reasons, we conclude the trial court abused its discretion by barring evidence of spoliation and refusing to fashion a remedy appropriate to the circumstances. See, e.g., *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523 (1) (484 SE2d 249) (1997), and cases cited therein; *Henson v. Ga.-Pacific Corp.*, 289 Ga. App. 777, 781 (2) (658 SE2d 391) (2008).[6]

To remedy the prejudice resulting from evidence of spoliation, a trial court is authorized to craft a solution that fits the facts; the court may

"(1) charge the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; (2) dismiss the case; or (3) exclude testimony about the evidence." This is not an exhaustive list of sanctions a trial court may impose; rather, "the trial court has wide latitude to fashion sanctions on a case-by-case basis, considering what is appropriate and fair under the circumstances."

(Footnote omitted.) *Wal-Mart Stores*, 290 Ga. App. at 545. We there-

---

because the two were not joint venturers for the purpose of providing professional pathological services. *Kitchens*, 280 Ga. App. at 167 (3). The present case addresses a different issue.

[5] Under Georgia law, an agency relationship arises "wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. Here, the applicable agreement between South Suburban and SRMC shows that South Suburban, through its "Designated Physician" who served as the laboratory director, was ultimately responsible for operating the laboratory, and that in addition to professional responsibilities, he or she had organizational and administrative responsibility, as well as responsibility for compliance with professional and public authorities, including "the State of Georgia in its regulations governing the licensing of hospital clinical laboratories."

Dr. Early admitted that she had the duty to review and approve laboratory policies and procedures and the duty to ensure that the laboratory complied with all applicable state and laboratory policies and procedures. She testified that the College of American Pathologists issues guidelines for how long a laboratory must keep blocks and slides, and that those guidelines were incorporated into the laboratory policies and procedures. She made clear that although the hospital laboratory employees are responsible for carrying out the procedures and handling the specimens, the responsibility for those items "ultimately . . . goes back to me." The clinical director of the laboratory employed by SRMC (and the designated witness for the hospital laboratory) similarly testified that the pathologists have "the responsibility of running the laboratory."

[6] We find no abuse of discretion, however, with regard to spoliation of the written policies and procedures of the laboratory.

fore reverse the trial court's decisions to bar evidence of spoliation and deny sanctions. We remand for the trial court to consider the remedy to be employed under the circumstances and applicable law.

2. The remaining issue is whether the trial court erred by granting the defendants' motion to exclude plaintiff's two expert witnesses on the ground that their testimony regarding causation was too uncertain and speculative to be submitted to the jury. The plaintiff's experts agree that there is no evidence of cancer on the slide Dr. Brusman saw but contend there were "suspicious cells," or "funny looking cells" that trigger a need to examine additional tissue. Thus the trial court's decision to exclude the experts is related to the spoliation issue because an inference may arise that the missing tissue block contained evidence harmful to the defendants. We therefore vacate that decision and remand for further consideration consistent with this opinion. By doing so, however, we do not mean to limit the authority of the trial judge to fashion a remedy for the spoliation. Kitchens's argument that the motion should have been denied because it was untimely is without merit because he has not shown that the "final pretrial conference" has been held. See OCGA § 24-9-67.1 (d).

*Judgment reversed in part and vacated in part, and case remanded with direction. Blackburn, P. J., and Smith, P. J., concur.*

DECIDED MARCH 29, 2010 —
RECONSIDERATION DENIED APRIL 14, 2010 —

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Terrance C. Sullivan, David E. Betts,* for appellants.

*Carlock, Copeland & Stair, Wayne D. McGrew III, Kim M. Ruder,* for appellees.