2014 UT App 126

**Teresa OCKEY, Plaintiff and Appellant,**

v.

**CLUB JAM and Jam in the Marmalade, LLC, Defendants and Appellees.**

No. 20130024–CA.

Court of Appeals of Utah.

June 5, 2014.

Richard F. Mortensen, for Appellant.

Fred R. Silvester and Matthew H. Wood, for Appellees.

Judge STEPHEN L. ROTH authored this Memorandum Decision, in which Judge J. FREDERIC VOROS JR. and Senior Judge PAMELA T. GREENWOOD concurred.[1]

Memorandum Decision

ROTH, Judge:

¶ 1 Teresa Ockey sued Club Jam and Jam in the Marmalade, LLC (the Club) for personal injuries she sustained after a ladder she was using inside the Club collapsed unexpectedly. The district court granted the Club's motion for summary judgment, and Ockey appealed. Ockey asserts that the ladder the Club produced for her expert to inspect was not the ladder she used the day of her injury. And she argues that "a reasonable inference from the fact that Club Jam produced the wrong ladder . . . requires the trial court to reject" the Club owner's deposition testimony, which was integral to the court's decision. We vacate the court's summary judgment and remand for further proceedings.

¶ 2 In September 2010, Ockey was invited to display some of her artwork on a column inside the Club.[2] When Ockey arrived, Todd Crofts, the Club manager, set up a ladder near the column for Ockey to use. After climbing the ladder twice without incident, Ockey "felt [the ladder] become unstable" and the "back right [leg] seemed to come up, . . . went forward[,] and then twisted." Ockey fell and sustained injuries, including a broken ankle that required surgery. After the fall, she experienced residual pain in her ankle, back, and neck. Within days of the accident, Ockey's friends, Tara Payne and Jason Stone, went to the Club to finish hanging her art. According to Payne, Crofts told her that the "ladder has been nothing but trouble." And Margo Smith, another friend who was with Ockey the day of her injury, claimed that Crofts told her that the ladder was "jinxed." Ockey filed a negligence action against the Club, alleging premises liability and res ipsa loquitur.

¶ 3 During discovery, Ockey described the ladder in a deposition as a folding ladder, "six feet tall, . . . aluminum," that had "some yellow on it," looked old, and had clearly "been used a lot." Before climbing the ladder, Ockey claimed, she repositioned it "maybe a foot to 18 inches" away from the column, allowing her to face the column directly and hang her art over the top of the ladder. Crofts's deposition testimony described the ladder differently. He testified that the ladder was "a yellow aluminum and fiberglass ladder" that was "eight feet tall," not six feet tall as Ockey had claimed. Crofts also offered a different account of Ockey's accident, claiming that she positioned the ladder alongside the column so she would have to turn sideways to hang the pictures. Brian Morris, the Club's owner, testified in a deposition that he believed the ladder was nine feet tall. He also stated that the Club used the ladder daily before and after the injury and that there had been only one other injury involving the ladder—Morris·cut his hand on a ceiling fan while using the ladder some time before Ockey's injury. Four days after Morris's deposition, Ockey visited the Club with an expert to inspect the ladder following a request under rule 34 of the Utah Rules of Civil Procedure. The ladder produced for inspection was eight feet tall and matched Crofts's description. Ockey insisted that the eight-foot ladder was not the one she used the day of her injury, and her expert confirmed that the ladder produced by the Club could not have been positioned in the way Ockey had described.

¶ 4 The Club moved for summary judgment, arguing that any dangers posed by the ladder "were open and obvious" and that the

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. In reviewing a district court's grant of summary judgment, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party" and recite the facts accordingly. *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

Club "had no reason to anticipate the accident" because the owners were "not aware of any other incidents in which the ladder itself caused harm to anyone." In response, Ockey argued that the ladder she fell from was not the same ladder she and her expert inspected at the Club, casting doubt on Morris's testimony that no one aside from himself and Ockey had been injured while using the ladder. Ockey also contended that if the Club had "destroyed or conceal[ed] the ladder," she would be "entitled to sanctions that include a default judgment and attorney fees."

¶ 5 Ockey submitted with her response an affidavit from her expert, F. David Pierce, which stated that it was "impossible for the Ladder [he] inspected to have been the one Ms. Ockey was using when she fell" because "the Ladder was too wide for her to reach the column to hammer nails into it while standing on the steps." Ockey also pointed to testimony from her two friends who used the ladder within days of her injury to finish hanging her art. They both testified that the ladder was six-feet tall, not eight- or nine-feet tall as the Club owner and manager claimed. Finally, Ockey highlighted other testimony that she argued showed the ladder was involved in other injuries, including Payne's assertion that Crofts told her that the "ladder has been nothing but trouble" and Smith's statement that after the accident, Crofts had described the ladder as "jinxed." Crofts claimed that he was referring to Morris's ceiling-fan injury, not any other incidents. Ockey's response did not identify any specific injuries involving the ladder other than Morris's and her own.

¶ 6 The district court granted the Club's motion for summary judgment. The court appeared to rely heavily on Morris's description of the frequent use of the ladder and the Club's sparse history of personal injuries: "[I]ntegral to this Court's decision [is] that the ladder in question had been used without incident countless times prior to and after Ms. Ockey's accident and that it had no obvious defects." As a result, the court stated, whether the ladder produced for inspec-

tion was the same ladder Ockey used the day of her injury "is not important and does not create a genuine issue of material fact. Even if the original ladder contained a hidden defect, there is simply no evidence that Club Jam knew or should have known of the defect, as evidenced by the frequent use of the ladder." The court also awarded the Club costs in the amount of $3,326.40.

¶ 7 Ockey appeals. She argues that the district court should not have granted the Club's motion for summary judgment. We review a district court's decision to grant summary judgment for correctness. *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 12, 192 P.3d 858. "Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Utah R. Civ. P. 56(c)). The parties' factual disputes at summary judgment all hinged on whether the ladder the Club produced at inspection was the same ladder Ockey used the day of her injury. The central question presented to us on appeal, then, is whether the identity of the ladder is material to Ockey's negligence claim. We conclude that it is.[3]

¶ 8 For Ockey's negligence claim to survive summary judgment, she needed to establish that there was a dispute of material fact about whether the Club breached a duty it owed to Ockey and whether that breach caused her injuries. *See Torrie v. Weber County*, 2013 UT 48, ¶ 9, 309 P.3d 216 (noting that a plaintiff cannot prevail on a negligence claim without establishing that the defendant breached a duty owed to the plaintiff); *Overstock*, 2008 UT 55, ¶ 12, 192 P.3d 858. Ockey claims that a hidden defect in the ladder caused her fall. She therefore needed to show that the Club failed to warn her even though (1) it could have discovered the defect through the exercise of reasonable care, (2)

---

**3.** Ockey also contends that the court's award of costs against her was an abuse of discretion. Because we conclude that the Club was not entitled to summary judgment, the Club is also not

tled to court costs under rule 54(d). *See* Utah R. Civ. P. 54(d) ("[C]osts shall be allowed as of course to the *prevailing party* unless the court otherwise directs . . . ." (emphasis added)).

the Club should have realized the defect posed an unreasonable risk of harm to her, and (3) she could not have " 'discover[ed] or realize[d] the danger' " on her own. *See Jensen v. Gardner*, 2012 UT App 146, ¶ 4, 279 P.3d 844 (quoting Restatement (Second) of Torts § 343 (1965)). As we have discussed, the district court ruled that even though the parties disputed the identity of the ladder produced at inspection, that fact was not material because the Club's sparse injury history was insufficient to put the Club on notice that any ladder it had used contained a hidden defect, if indeed one existed. This conclusion relied on Morris's assertions that his employees used the ladder "daily" before and after the accident without any difficulty and that Ockey's accident was one of just two personal injuries at the Club over the past five years—Ockey's and one other unrelated to the ladder's condition.

¶ 9 When reviewing a district court's decision granting summary judgment, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party"—in this case, Ockey. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). Construing the facts in her favor, we must assume that the ladder the Club produced at inspection was not the ladder Ockey used the day of the accident. This fact leads to several possible inferences; here are three that we consider to be reasonable: (1) the Club intentionally destroyed or concealed the ladder in order to avoid liability; (2) the Club innocently lost or destroyed the ladder under circumstances independent of Ockey's lawsuit; and (3) the Club did not intentionally destroy or lose the ladder, but it is mistaken about which ladder Ockey used the day of the accident. We conclude that because these inferences raise questions of fact material to Ockey's negligence claim, summary judgment was not appropriate.

¶ 10 The dispute over the identity of the ladder is material to Ockey's negligence claim in at least two respects. First, viewed in the light most favorable to Ockey, it raises questions about the reliability of Morris's testimony regarding the number of injuries that resulted from the ladder's use. Perhaps the ladder the Club produced at inspection was involved in just one other injury, but another ladder at the Club was involved in others. Or perhaps Morris concealed the real ladder and is not being truthful about the identity of the ladder, the number of injuries associated with it, or its condition. *Cf.* Model Utah Jury Instructions CV 123 (2d ed.2014) ("If you believe any witness has intentionally testified falsely about any important matter, you may disregard the entire testimony of that witness, or you may disregard only the intentionally false testimony."). In any event, disputing the identity of the ladder implicitly disputes Morris's account of the Club's safety record, which is material to the question of whether the Club had notice that the ladder Ockey used was defective and therefore breached a duty when it failed to warn her of its condition.

¶ 11 Second, rule 37 of the Utah Rules of Civil Procedure empowers district courts to impose sanctions for spoliation— when a party "destroys, conceals, alters, tampers with or fails to preserve" evidence. Utah R. Civ. P. 37(i). Among other things, the court may "strike all or part of [the party's] pleadings, … render judgment by default on all or part of the action," award attorney fees, or "instruct the jury regarding an adverse inference." *Id.* R. 37(e)(2)(D), (E), (F). District courts have "broad discretion" to determine if a party's conduct justifies the imposition of sanctions and, if so, which sanction is appropriate to the circumstances. *Gorostieta v. Parkinson*, 2000 UT 99, 131, 17 P.3d 1110; *see also Coxey v. Fraternal Order of the Eagles*, 2005 UT App 185, ¶¶ 2–6, 112 P.3d 1244. And unlike other discovery violations, a party who destroys or conceals relevant evidence need not do so willfully or in bad faith to trigger the penalties outlined in rule 37. *Daynight, LLC v. Mobilight, Inc.*, 2011 UT App 28, ¶ 2, 248 P.3d 1010 (noting that "the destruction and permanent deprivation of evidence" differs qualitatively from other discovery violations, so spoliation "does not require a finding of willfulness, bad faith, fault, or persistent dilatory tactics" to warrant sanctions under rule 37 (internal quotation marks omitted)).

¶ 12 In opposing the Club's motion for summary judgment, Ockey specifically requested the imposition of sanctions, including "a default judgment and ... attorney fees," if the court determined the Club had destroyed or concealed the ladder. She cited rule 37 and argued that if the Club "spoliated the Ladder, the plain language of [the rule] ... would allow the trial court to strike all of [the Club]'s pleadings." The court never reached the issue of spoliation because it believed it had adequately resolved the case on other grounds. *See supra* ¶ 6. But if Ockey was entitled to a sanction under rule 37, the consequences could have made summary judgment inappropriate.

¶ 13 Other jurisdictions have recognized that a sanction for spoliating relevant evidence can create an issue of fact and preclude summary judgment. *See, e.g., Kitchens v. Brusman*, 303 Ga.App. 703, 704, 694 S.E.2d 667 (2010) ("Proof of spoliation raises a rebuttable presumption against the spoliator that the evidence favored the spoliator's opponent, a fact rendering summary judgment inappropriate." (citation and internal quotation marks omitted)); *Adobe Land Corp. v. Griffin, LLC*, 236 S.W.3d 351, 360 (Tex.App.2007) (concluding that summary judgment was inappropriate where the prevailing party had destroyed "material evidence that went to the very heart" of the case). While Utah's courts have not formally recognized a freestanding spoliation doctrine independent of the rules of civil procedure,[4] rule 37 seems to address the same concerns as these cases, imposing similar sanctions to discourage similar misconduct. *See, e.g., Beers v. Bayliner Marine Corp.*, 236 Conn. 769, 675 A.2d 829, 831–32 (1996) (collecting cases from other jurisdictions that discuss the imposition of adverse inferences against a party who destroys or conceals evidence). And we see no reason why the spoliation of relevant evidence would be treated any differently under rule 37 than under an independent spoliation doctrine, at least under the circumstances of this case.

¶ 14 Consequently, we conclude that granting the Club's motion for summary judgment was inappropriate in these circumstances; the district court should have addressed the potential effects of spoliation on the credibility or reliability of the Club's summary judgment evidence and whether Ockey's assertions in that regard created a genuine issue of material fact precluding summary judgment. And in response to Ockey's request for rule 37 sanctions, the court should have resolved the question of whether the ladder the Club produced was the original ladder and, if not, the circumstances that had led to its production for Ockey's inspection rather than the original. If the court determined that it was not the original ladder, then it would have to determine whether Ockey was entitled to a discovery sanction and, if so, whether the chosen sanction precluded summary judgment. Thus, the resolution of the issues surrounding Ockey's evidence that the ladder the Club produced was not the ladder it originally provided for her to use to hang her artwork has potentially significant implications with regard to the resolution of the Club's summary judgment motion that were not taken into account by the district court.

¶ 15 In reaching this conclusion, we express no opinion regarding whether the Club destroyed or concealed the ladder; whether rule 37 sanctions would be justified if it did; which sanction, if any, would be appropriate; or even whether summary judgment might ultimately be available in this case. Each of those questions is within the purview of the district court, because unlike an appellate court, it "deal[s] first hand with the parties and the discovery process," *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (citation and internal quotation marks omitted), and is therefore best equipped to resolve those issues. Rather, we simply conclude that the court did not adequately address the issues raised by Ockey's spoliation

---

4. *See Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 419 (Utah Ct.App.1994) ("While [the plaintiff] cites no authority demonstrating that Utah has adopted the spoliation doctrine, we conclude that it would not apply to the facts of this case in any event."); Margaret M. Koesel & Tracey L. Turnbull, Spoliation of Evidence 125–256 (Daniel F. Gourash ed., 2d ed.2006) (surveying the sanctions that courts in all fifty states impose for the destruction of evidence and noting that Utah courts have not recognized the spoliation doctrine outside the specific application of rule 37).

claim and the evidence supporting it when the court granted summary judgment against her.[5]

¶ 16 We recognize that our decision today may not provide the district court with the same degree of guidance appellate courts endeavor to provide to aid the resolution of issues that will undoubtedly arise on remand. *See, e.g., State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867 (exercising discretion to address "other issues presented on appeal that will likely arise during retrial ... for purposes of providing guidance on remand"). But due to the novelty of the procedural issue presented here, we feel further comment may unnecessarily narrow the scope of the district court's inquiry regarding issues we are relatively ill-equipped to address at this stage of the litigation, where these issues have not been briefed by the parties on appeal or subjected to the crucible of adversarial testing in the

district court. *Cf. McPherson v. McPherson*, 2013 UT App 302, ¶ 8, 318 P.3d 773 (noting that comments on the merits of an alimony award "were intended to guide and focus the trial court's consideration on remand on an issue we concluded had not been adequately addressed," not "to superimpose any particular findings of fact, limit the sound exercise of the trial court's discretion, or dictate any particular result").

¶ 17 Accordingly, we vacate the district court's order granting the Club's motion for summary judgment and remand for further proceedings consistent with this decision.

---

5. On remand, the district court may have the unenviable task of sorting through a variety of potentially complex procedural questions upon which Utah's appellate courts have so far provided little guidance. If the Club spoliated the ladder as Ockey claims, the court will need to determine whether rule 37 sanctions are warranted, and if they are, which sanction is appropriate under the circumstances. And it may still need to decide whether the spoliation issue is ultimately a question of fact that should be determined by a jury. *See Beers v. Bayliner Marine Corp.*, 236 Conn. 769, 675 A.2d 829, 832–34 (1996) (discussing the impact an adverse inference of spoliation may have on the plaintiff's burden of proof at summary judgment and at trial); Jamie S. Gorelick et al., Destruction of Evidence § 2.22C (Aspen Publishers 2014) (collecting cases where summary judgment was either granted or denied based on a spoliation inference); David C. Norton et al., *Fifty Shades of Sanctions: What Hath the Goldsmith's Apprentice Wrought ?*, 64 S.C. L. Rev. 459, 461–70 (2013) (summarizing the federal courts' ap-

proach to spoliation, including instances where the issue is submitted to the jury even after the judge's imposition of sanctions). And that could involve deciding whether Utah recognizes a free-standing spoliation doctrine like other states that is independent of rule 37—a question that Utah courts have not yet definitively answered. *See Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 419 (Utah Ct.App.1994) ("While [the plaintiff] cites no authority demonstrating that Utah has adopted the spoliation doctrine, we conclude that it would not apply to the facts of this case in any event."). *See generally* Rachel A. Campbell, Annotation, *Effect of Spoliation of Evidence in Tort Actions Other than Product Liability Actions*, 121 A.L.R. 5th 157 (2004) (surveying state and federal approaches to the spoliation doctrine, including when the question is submitted to the jury and how spoliation inferences might interact with the plaintiff's burden of proof). For reasons we have already discussed, we leave it to the district court to determine whether these issues are ultimately pertinent to the facts of this case.