**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 2, 2018**

# In the Court of Appeals of Georgia

A18A1400. WILKINS v. CITY OF CONYERS.

RICKMAN, Judge.

In this wrongful death action filed against the City of Conyers ("the City"), Steve Wilkins appeals from the trial court's order dismissing his lawsuit as a sanction for the spoilation of evidence pertinent to his claims. Because we conclude that the trial court abused its discretion in dismissing the complaint, we reverse and remand this case to the trial court for proceedings consistent with this opinion.

The relevant facts are as follows. On May 26, 2015, Wilkins's pregnant wife and his unborn child were tragically killed when his wife hydroplaned while driving his truck and struck another vehicle. There was a substantial amount of water on the roadway at the time of the accident, extending from the middle of the roadway to the top of–and in some places, spilling over–the six-inch curb. The storm drain servicing

that section of the roadway was clogged and it is undisputed that, although maintenance of the drain and the roadway immediately surrounding it was the responsibility of the City, the City believed the drain to be on county property and, consequently, failed to maintain it.[1] Wilkins alleges that the City's negligent failure to maintain the drain and surrounding roadway resulted in a dangerous condition, namely the pooled water, which caused the death of his wife and unborn child.

By certified letter dated May 29, 2015, Wilkins was notified that his truck had been towed to Chancey's Wrecker Service, Inc., and that Wilkins would be charged a towing fee, in addition to accruing a $20 per day storage fee and administration charges for notifications sent regarding the vehicle. The notice was sent to the address listed on Wilkins's driver's license–his mother's home–although he no longer lived there. It was signed for and received by Wilkins's mother on June 3, 2015, and Wilkins admitted that he received and read the letter.

Wilkins retained counsel who, on June 8, 2015, called Chancey's to confirm its possession of the truck and to inform Chancey's that he was representing Wilkins and would be sending a letter requesting that the vehicle be preserved. The same day,

---

[1] The border between property belonging to the City and that belonging to the adjoining county was approximately 100 feet from storm drain at issue.

counsel sent a letter to Chancey's specifically directing Chancey's to "hold and retain [Wilkins's truck] and not modify or release any and all of [the truck], including all parts, tires, pictures, records, reports, incident reports, accident reports, and any other materials, including the actual vehicle[ ]." The letter was sent via facsimile and certified mail, was addressed to the manager in accordance with Chancey's express instructions, specifically stated that Chancey's failure to preserve the vehicle may result in severe sanctions, and directed Chancey's to contact counsel with any questions.

During the first week of July 2015, counsel again telephoned Chancey's and confirmed that it had received the letter and was preserving Wilkins's vehicle. At no time did Chancey's notify counsel of a demand for payment or indicate that compliance with counsel's preservation request was dependant upon payment of any kind. Nevertheless, the same week, Chancey's sent a certified letter to Wilkins demanding payment of $1450[2] and notifying him that the "vehicle and its contents will be deemed abandoned after thirty (30) days, and will be sold at public sale for all

---

[2] The demand for payment included a towing fee of $150.00, a storage fee to date of $840.00, "administrative fees" totaling $300.00, and a $200.00 auction fee.

charges due." Chancey's did not copy counsel on the letter, which was received at the home of Wilkins's mother on July 9, 2015 and signed for by his aunt.

During the first week of August, Wilkins's counsel–who remained unaware of the letter demanding payment–contacted Chancey's to confirm that the vehicle was still being preserved and was told it had been destroyed. It was less than 30 days from the date Chancey's letter was received and signed for by Wilkins's aunt.[3]

The City thereafter moved to strike Wilkins's complaint for spoilation of evidence as a sanction for Wilkins's "inexplicable decision . . . to allow the truck his wife was driving to be destroyed." Wilkins filed a sworn affidavit explaining that he was not regularly checking his mail at his mother's house, asserting his understanding that all communications related to the vehicle and/or the lawsuit would be directed to his attorney, and maintaining that he was unaware of Chancey's intent to dispose of the vehicle.

The parties also filed competing expert affidavits. The City presented the opinion of a professionally certified accident reconstructionist who examined the accident scene and reviewed the evidence collected at the time of the crash, which

---

[3] It was not clear from the letter whether the 30-day abandonment deadline began to run from the date of mailing or the date of receipt.

4

included pictures of Wilkins's truck and its tires, as well as inspected the second vehicle involved in the accident and analyzed that vehicle's data recorder. He opined that without Wilkins's truck, he was unable to determine other potential causes for the crash, such as a mechanical or brake failure of the vehicle causing loss of control and/or loss of tire traction due to low tread. He further stated that although he was able to estimate the approximate speed that Wilkins's wife was driving at the time of the accident, he was unable to determine whether she had braked before the accident in order to establish whether she had been traveling at a higher rate of speed.

Wilkins in turn filed a counter-affidavit, also from a professionally certified accident reconstructionist, who reviewed the same evidence and the City expert's report. He opined that given the reported depth of the water, the primary cause of Wilkins's wife's loss of control of the vehicle was excessive water on the roadway. He further stated that even if Wilkins's truck had not been destroyed, it would not have provided any additional reliable evidence regarding the cause of the accident because it did not have a data recorder; a brake or mechanical failure would have had little bearing on Wilkins's wife's ability to control the car since during a hydroplane event, there is very little friction between the vehicle and the road surface; and due

to the lack of friction, a hydroplane event can occur regardless of the speed of the driver.[4]

Following a hearing, the trial court granted the City's motion to strike the complaint upon concluding that Wilkins had a duty to preserve the truck and "failed to respond to either of [Chancey's] letters, make arrangements for his vehicle to be stored, or otherwise preserve the vehicle." The trial court summarily held that the City was "severely prejudiced" by the destruction of the truck, and that the striking of Wilkins's complaint was the appropriate sanction because, "[w]hile ignorance of a duty is perhaps not as blatant as the intentional destruction of evidence, it is not the moral equivalent of 'good faith' and supports a finding that [Wilkins] acted in bad faith." This appeal follows.

"The term 'spoliation' is used to refer to the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation." (Citation and punctuation omitted.) *Phillips v. Harmon*, 297 Ga. 386, 393-394 (II) (774 SE2d 596)

---

[4] The City moved to exclude Wilkins's expert testimony as to his opinion regarding the cause of and/or contributing factors to the accident on the basis that other than taking photographs and walking the scene, the expert himself had "not conduct[ed] any other type of meaningful investigation or scientific methodology to determine potential alternate causes or confirm his hypothesis." The trial court never ruled on this motion.

6

(2015). Included within the trial court's inherent power to control the behavior of litigants and to maintain the integrity of the judicial process is the discretion to fashion appropriate sanctions for the spoliation of evidence. See *Bouve & Mohr v. Banks*, 274 Ga. App. 758, 762 (1) (618 SE2d 650) (2005); *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 179 (2) (539 SE2d 873) (2000); see generally OCGA § 15-1-3 (4).

When spoliation results from the acts of a third-party, it is sanctionable against a litigant "if the third party acted as the litigant's agent" in destroying or failing to preserve the evidence. *Bouve & Mohr, LLC*, 274 Ga. App. at 762 (1); see also *Phillips v. Owners Insurance Company*, 342 Ga. App. 202, 204, n.5 (802 SE2d 420) (2017); *Lustre-Diaz v. Etheridge*, 309 Ga. App. 104, 106 (709 SE2d 309) (2011); *Kitchens v. Brusman*, 303 Ga. App. 703, 708-709 (1) (b) (694 SE2d 667) (2010). Under Georgia law, "[a]n agency relationship exists where one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." *Bouve & Mohr, LLC*, 274 Ga. App. at 762-763 (1); see OCGA § 10-6-1.

In the event that a trial court determines that a party and/or his or her agent wrongfully destroyed evidence, the court "has wide latitude to fashion sanctions on a case-by-case basis, considering what is appropriate and fair under the

7

circumstances." (Citation and punctuation omitted.) *Kitchens*, 303 Ga. App. at 709 (1) (b); see *Phillips*, 297 Ga. at 398 (II). In so doing, we have held that the trial court should weigh the following five factors:

> (1) whether the party seeking sanctions was prejudiced as a result of the destroyed evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the destroying party acted in good or bad faith; and (5) the potential for abuse if any expert testimony about the destroyed evidence was not excluded.

(Citation and punctuation omitted.) *Phillips*, 297 Ga. at 399, n.12 (B); see also *AMLI Residential Properties v. Georgia Power Co.*, 293 Ga. App. 358, 361 (1) (667 SE2d 150) (2008).

On occasion, the trial court may determine in its discretion that severe sanctions, "such as an instruction to the jury to presume rebuttably that the evidence was adverse to the spoliating party's claim or defense, the entry of a default judgment, or the dismissal of the case," are appropriate. *Cooper Tire & Rubber Company v. Koch*, 303 Ga. 336, 339 (2) (812 SE2d 256) (2018); see also OCGA § 24-14-22. Significantly, however, those sanctions are reserved for "exceptional cases" – namely "those in which the party lost or destroyed material evidence intentionally in bad faith and thereby prejudiced the opposing party in an uncurable way," (Citation and

punctuation omitted.) *Cooper Tire*, 303 Ga. at 343 (2) (d); see also *Phillips*, 297 Ga. at 398-399 (II) ("The good or bad faith of the party is a relevant consideration because one of the rationales for the [sanction] is that it deters parties from pretrial spoliation of evidence and serves as a penalty, placing the risk of an erroneous judgment on the party that wrongfully created the risk.") (citation and punctuation omitted). But see *AMLI Residential Properties*, 293 Ga. App. at 363-364 (1) (a) (affirming trial court's exclusion of expert testimony related to spoliated evidence despite the judge's conclusion that it was not done in bad faith per se because it was knowingly done in violation of the understanding between the parties and was, therefore, "wrongful").

On the other hand, "[t]he loss of relevant evidence due to mere negligence . . . normally should result in lesser sanctions, if any at all." *Cooper Tire*, 303 Ga. at 343 (2) (d). Indeed, "[n]egligent or even grossly negligent behavior does not logically support [the inference that the missing evidence was unfavorable to the party responsible for its loss or destruction]" because "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have." Id. at 347, n.6 (3).

9

Here, the trial court erred by attributing bad faith to Wilkins based upon Chancey's destruction of the evidence and abused its discretion by imposing the most severe sanction of striking his complaint. See *Kitchens*, 303 Ga. App. at 709 (1) (c) (reversing the trial court's ruling on spoliation of evidence after finding an abuse of discretion); see also *Cooper Tire*, 303 Ga. at 343 (2) (d) (emphasizing that the harshest spoliation sanctions should be reserved for those involving bad faith and resulting in uncurable prejudice). While we will not speculate as to Chancey's motives, there is no way to construe the evidence so as to conclude that Chancey's was acting as Wilkins's agent when it disregarded his counsel's repeated requests to preserve the vehicle. See OCGA § 10-6-1; *Boswell v. OHD Corp.*, 292 Ga. App. 234, 236 (664 SE2d 262) (2008). Counsel's request to maintain the truck was made within ten days of Wilkins receiving notice that it was in Chancey's possession, and that request was immediately followed by a fax and certified letter. Counsel called Chancey's on two additional occasions to verify the vehicle's preservation–all of which occurred within three months of the date of the accident. Yet despite these repeated communications from counsel, Chancey's failed to mention to him the demand for payment and sent its first and only notice of the demand to Wilkins via mail. Chancey's then destroyed the vehicle less than 30 days from the date the letter

10

was received and signed for by Wilkins's aunt. At no time did Wilkins or his counsel, expressly or by implication, authorize or ratify Chancey's conduct in doing so. See OCGA § 10-6-1.

At most, given his counsel's communications to Chancey's, Wilkins's failure to ensure his receipt of the demand for payment and/or to remit that payment was negligent. See generally *Cooper Tire*, 303 Ga. at 343 (2) (d). Accordingly, we reverse the trial court's order striking the complaint and remand this case to the trial court to fashion a remedy more appropriate to the circumstances of this case and consistent with this opinion.

*Judgment reversed and case remanded with direction. McFadden, P. J., and Ray, J., concur.*