305 Ga. 313
FINAL COPY

S18A1512. THE ANTHEM COMPANIES, INC. et al. v. WILLS et al.

BETHEL, Justice.

The Anthem Companies, Inc. and Richard Andrews appeal the grant of spoliation sanctions issued against them, arguing that the trial court erred in finding spoliation in the first instance and in sanctioning them with an adverse jury instruction. Because we agree that, under the circumstances of this case, the trial court abused its discretion in awarding spoliation sanctions, we reverse.

1. On September 24, 2008, Dee Dee Smith, an employee of Blue Cross Blue Shield of Georgia ("BCBS," an affiliate of Anthem, formerly Wellpoint Companies, Inc.), ate lunch at the BCBS cafeteria in its Columbus office complex. Smith ordered a meal from one of the vendors, Captain Tom's Seafood, owned by appellee Cheryl Wills. Smith observed what she believed to be an insect in her black-eyed peas. She took photographs of the supposed contaminant in the food container with her digital camera (the "original

images"). She sent BCBS building superintendent Richard Andrews an e-mail attaching the digital photographs allegedly showing the bug (the "Anthem e-mail images"). She also submitted these same digital photographs to Walgreens (the "Walgreens digital images"), which made prints of the photographs that she hand-delivered to Andrews the next day.

The next day, Andrews sent an e-mail informing employees that Captain Tom's had been removed from the list of approved vendors for the BCBS cafeteria.[1] That e-mail was forwarded to a large number of BCBS employees — some 2,200 according to Wills' counsel's demand letter and the trial court's order. News of the incident was also posted by someone on Facebook, and the story of the insect in the peas became widely known in the community.

Wills believed that statements in Andrews' e-mail were libelous because they accused Captain Tom's of the crime of selling adulterated food, and she demanded a retraction verbally via her then-husband and, later, in writing via her attorney on November 20, 2008. BCBS declined to retract, and Wills filed

---

[1] The e-mail referred to "the worm an associate found in her peas and the talk of a boycott." Andrews further wrote, "Normally I love a good boycott, pitchforks and all. However, in this case it is unnecessary. I've already asked for [Captain] Tom's to be replaced."

2

an action on December 15, 2008, against Anthem's predecessor and Andrews (collectively, "Anthem") seeking damages for defamation and tortious interference with business relations. Wills claimed that, as a result of the wide distribution of the e-mail, the business closed, she and her then-husband filed for bankruptcy, and they lost their home, cars, and savings.

Andrews concedes that, at some point between September 24, 2008, and 2017, he lost the printed versions of the Walgreens digital images provided to him by Smith (the "lost Walgreens prints"). Anthem contends that these lost Walgreens prints were identical to the digital versions preserved on Walgreens' and Anthem's servers, citing affidavits from Andrews and Smith. Anthem also cites the testimony of two experts who concluded that the Anthem e-mail images were not altered.

Wills asserts that she did not know that the lost Walgreens prints existed until Smith's deposition on March 13, 2017. Wills further contends that the Anthem e-mail images and the Walgreens digital images have been altered by adding in a "bug" or "maggot" and by showing the food container to be a different color than it actually is. Wills and two employees of Captain Tom's testified that they examined the box returned by Smith, and that the object of

3

which she complained was not an insect at all, but either a partial or underdeveloped pea. The witnesses testified that what they saw in other photographs printed from the Walgreens digital images was not what they saw when they inspected the contents of the box.[2] The restaurant manager testified that a black and white version of the digital photograph she saw on Wills' phone at the time of the incident did not show a bug.

Smith also filed a complaint with the Columbus Health Department. A health department employee testified that she inspected the digital photographs that Smith e-mailed them and relayed her opinion to Smith that the photos did not depict a bug or maggot but, rather, showed part of a pea. And although Smith expressed some confusion over the appearance of photographs she was shown at her deposition that were printed from digital versions produced by the Columbus Health Department (the "Health Department prints"), Smith later submitted an affidavit swearing that the Walgreens digital images showing the bug are identical to the lost Walgreens prints she took to Andrews.

---

[2] Color prints made from the Anthem e-mail images are attached to appellees' brief. An entomologist testified by affidavit that the object in those photographs appears to be an insect, more specifically a beetle larva. Anthem contends the item is "a Cowpea Curculio, a common agricultural pest in Georgia."

On April 21, 2017, Anthem filed a motion for summary judgment on Wills' claims. After a hearing on June 30, 2017, the trial court granted the motion as to Wills' claims for injunctive and equitable relief and tortious interference with contract but denied summary judgment on the defamation claim.

Wills filed a motion for sanctions for spoliation of evidence on May 22, 2017, which she supplemented on June 28, 2017. On August 2, 2017, the trial court granted the motion without holding an evidentiary hearing.[3] The trial court found that Andrews was aware of the litigation, but failed to preserve the lost Walgreens prints he received from Smith or give them to Anthem's attorneys. The trial court further found that, "[i]n this age of rapid technological advances," alteration is a distinct possibility, and the dispute could have been avoided had the lost Walgreens prints been preserved. While the trial court did not find that Andrews acted in bad faith, the trial court decided that it would give an instruction to the jury that "spoliation of evidence creates a rebuttable presumption that the evidence would have been harmful to the spoliator."

---

[3] The spoliation motion was pending at the time of the hearing on the motion for summary judgment, and the issue was argued by both sides at considerable length in that hearing. Neither side called any witnesses.

5

Anthem filed an application for interlocutory appeal of the trial court order, which the Court of Appeals denied. We granted certiorari to consider whether the trial court properly imposed spoliation sanctions for the loss of printed versions of electronically stored information ("ESI"). Based on our approval of its interlocutory appeal, Anthem then filed a timely notice of appeal in the trial court. The appeal was docketed to the August 2018 term of this Court.

2. Anthem argues that the trial court erred in finding that it committed spoliation and in issuing sanctions against it because the lost Walgreens prints were merely prints of digital images that are currently preserved in unaltered electronic form. Under the circumstances of this case, we agree that the trial court erred and reverse.

A trial court has wide discretion in adjudicating spoliation issues, and we will not disturb the trial court's judgment absent an abuse of discretion. See *Phillips v. Harmon*, 297 Ga. 386, 397 (II) (774 SE2d 596) (2015). "The term spoliation is used to refer to the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation. Such conduct may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator." (Citations and punctuation omitted.) Id. at 393-394 (II).

> [T]he most severe sanctions for spoliation are reserved for "exceptional cases," generally only those in which the party lost or destroyed material evidence intentionally in bad faith and thereby prejudiced the opposing party in an incurable way. The loss of relevant evidence due to mere negligence . . . normally should result in lesser sanctions, if any at all.

*Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 343 (2) (d) (812 SE2d 256) (2018).

Viewed in the light most favorable to Anthem as the non-moving party,[4] the record evidence shows the following. Smith used her digital camera to take several photographs of the alleged insect in her food. She uploaded these photographs to her home computer and e-mailed them to Andrews. The next day, Smith uploaded the digital photographs to the Walgreens website, printed the photographs, and gave the printed versions to Andrews. The Anthem e-mail images and the Walgreens digital images are apparently both still available electronically. Further, while Smith initially expressed some confusion over the Health Department prints that were shown to her at her deposition, Smith has

---

[4] *Cooper Tire & Rubber Co.*, 303 Ga. at 344 (3) (applying the same standard of review as for a motion for summary judgment where the trial court considered matters outside the pleadings in deciding a motion for spoliation sanctions, including witness affidavits and depositions, but did not hold an evidentiary hearing).

7

averred that the Walgreens digital images are identical to the lost Walgreens prints she took to Andrews. These lost Walgreens prints are the supposedly spoliated evidence at issue in this case.[5]

Here, in awarding one of the most severe sanctions possible — a jury instruction on spoliation that allows an adverse inference to be made against Anthem — the trial court found that Andrews had a duty to preserve the lost Walgreens prints that Smith gave him. The trial court further found the loss of these prints to be "inexcusable" in that it prevented the trial court from assessing the veracity of Wills' suggestion that the digital photographs had been altered. Moreover, in a departure from the general rule, the trial court imposed an extreme sanction absent any finding of intentionality, bad faith, or incurable prejudice. This was erroneous.

Generally speaking, absent other statutory or regulatory obligations, a party does not have to keep printed versions of ESI that is otherwise preserved and which contain the same or even less relevant information than the ESI, unless the existence of the printed version is independently relevant to the

---

[5] Of course, the original evidence was the digital file on Smith's camera, which is no longer available.

litigation.[6]

Wills alleges that Anthem had a duty to retain the lost Walgreens prints because the digital photographs may have been tampered with. But the only window for alteration of the photographs was before Anthem received the e-mail images. Thus, any alteration of the original digital images by Smith before she transmitted them to Anthem would not be attributable to Anthem. The trial court did not find, nor does the record before this Court support a finding, that the images Anthem received via e-mail have ever been altered by Anthem from the form in which they were received. Nor does Wills present any evidence that at the time the lost Walgreens prints were mislaid, Anthem knew that they were somehow relevant to the litigation in a way that the digital images were not. Indeed, it appears that the lost Walgreens prints are entirely irrelevant to this case, as more prints can be made at any time from the Walgreens digital images

---

[6] A printed version may contain less information than the ESI itself because ESI often contains metadata that does not appear on printed versions. A printed version of ESI may also contain less information than the ESI when, for example, the printed version represents an incomplete set of pages from a multi-page document. On the other hand, printed versions can sometimes contain more relevant information than the ESI. For example, a printed version may contain handwritten annotations. See, e.g., *Phillips*, 297 Ga. at 394 (II) (evidence that printed fetal monitoring strips often contained handwritten nursing notes). Or a printed version independently may be relevant to the litigation if, for example, it comes from a particular employee's files and thus shows that the employee had a copy of the document.

if deemed necessary. Accordingly, we conclude that the trial court abused its discretion and reverse.[7]

Judgment reversed. All the Justices concur, except Boggs, J., not participating.

---

[7] This Court granted Anthem's interlocutory appeal only to consider whether the trial court properly imposed spoliation sanctions for the loss of original print copies of ESI. Accordingly, we decline the invitation to address Anthem's other, unrelated enumeration of error.

Decided February 4, 2019    Reconsideration denied March 4, 2019.

Spoliation. Muscogee Superior Court. Before Judge Smith.

Buchanan & Land, Jerry A. Buchanan, William A. Buchanan; Lewis, Brisbois, Bisgaard & Smith, James R. Doyle II; Troutman Sanders, James A. Washburn, Steven L. Strasberg, Pete Robinson, for appellants.

James D. Patrick, Jr., for appellees.

Ean K. Cullefer, amicus curiae.