**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 5, 2021**

# In the Court of Appeals of Georgia

A20A1631. CREEK HOUSE SEAFOOD & GRILL, LLC v. PROVATAS, AS SURVIVING SPOUSE OF MICHAEL PROVATAS et al.

REESE, Presiding Judge.

Creek House Seafood & Grill, LLC, appeals from the trial court's order granting Joyce Provatas's motion for spoliation sanctions. Creek House contends that the trial court abused its discretion because there was no evidence that video footage of the fall still existed at the time it received a preservation letter, and that the sanction imposed by the trial court was too harsh a penalty. We agree, and for the reasons set forth infra, reverse the decision of the trial court.

Viewed in the light most favorable to Creek House as the non-moving party,[1] the record shows the following. Creek House was a restaurant that opened in May 2017. Prior to the opening, the facility was owned and operated by another restaurant. Joyce Provatas, Michael Provatas, and their grandchildren visited Creek House about two weeks after its opening. They sat down at one of the raised booths, which required a step up to enter. When Michael Provatas attempted to enter the booth, he slipped on the step[2] and fell backwards onto the floor. A restaurant patron helped him up and into the booth. The party ordered food and finished their meal, and when it was time to leave, Michael Provatas asked the employees of Creek House to help him exit the booth. The party asked if two staff members could carry him to his car, but the manager declined that request. The party then asked Creek House for a wheelchair. Although Creek House could not provide a wheelchair, the manager offered to call an ambulance. According to the manager, the party initially resisted this request, but acquiesced when the manager explained that the employees could not

---

[1] See *The Anthem Cos. v. Wills*, 305 Ga. 313, 316 & n. 4 (2) (823 SE2d 781) (2019) (applying this standard where the trial court considered matters outside the pleadings in deciding a motion for spoliation sanctions, including witness affidavits and depositions, but did not hold an evidentiary hearing); *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 344 (3) (812 SE2d 256) (2018) (same).

[2] Some witnesses referred to this step as a ledge or riser.

carry Michael Provatas. An ambulance arrived and took Michael Provatas to the hospital. He did not recover his ability to walk and died approximately two months after the fall.

At the time of the fall, Creek House had a video surveillance system which the previous owner had installed and programmed. It appeared to be working, but the Creek House employees did not use the system and did not know the password to access the recordings. Nine days after the fall, Creek House received a preservation letter to preserve video recordings of the accident. After receiving the letter, the manager attempted to access the recordings, but he did not have the password. He contacted the former owners and an IT company in an attempt to access the recordings, but they were unsuccessful. The manager ultimately sent the recording device to Creek House's managing company in Knoxville, Tennessee.

Joyce Provatas sued Creek House in 2019. During the course of the lawsuit, she repeatedly asked for the recording of the fall, and eventually filed a motion to compel. Creek House sent the recorder to an expert who was able to access some of the recordings on the system.[3] The recordings were primarily from November 2017. The expert opined that the system recorded on a week-to-week basis and would

---

[3] According to Joyce Provatas, her counsel was able to access the recordings once provided with the physical recorder using the default system password of 1234.

overwrite recordings on a six or seven day loop. While the expert testified that it was "possible" to recover overwritten recordings, and that he had done similar work in the past, he could not state with certainty whether it could be done in this case. The expert stated that the likelihood of recovering an overwritten recording decreased the longer the drive was in use.

Joyce Provatas filed a motion for spoliation sanctions, which the trial court granted. As spoliation sanctions, the court stated that it would issue a jury instruction stating that the jury could consider and presume that the destroyed video evidence would have been favorable to the plaintiff, but that the jury was not required to do so. The court also stated that it would allow expert testimony to explain the circumstances surrounding the destruction of the recording. We granted Creek House's application for interlocutory review, and this appeal followed.

"A trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse. Where a trial court makes findings of fact in ruling on a spoliation claim, this Court will uphold those findings if there is any evidence to support them, i.e., unless they are clearly erroneous."[4] With these guiding principles in mind, we now turn to Creek House's claims of error.

---

[4] *Reid v. Waste Indus. USA*, 345 Ga. App. 236, 245 (6) (812 SE2d 582) (2018) (citations and punctuation omitted).

1. Creek House argues that there was no evidence that a video of the fall existed in the first place. We need not make that determination, however, because we hold that, assuming such footage did exist, Creek House did not have a duty to preserve the footage as it did not have actual or constructive knowledge of a lawsuit at the time the footage was overwritten.

> Spoliation refers to the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation. Such conduct may create the rebuttable presumption that the evidence would have been harmful to the spoliator. However, in order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue. In the case of a defendant, such duty arises when the alleged spoliator has actual or constructive notice that the plaintiff is contemplating litigation.[5]

Even under the wide deference afforded to the trial court in deciding spoliation motions,[6] the trial court here abused its discretion in finding that Creek House had a

---

[5] *Reid*, 345 Ga. App. at 245 (6) (citations and punctuation omitted); see also OCGA § 24-14-22 ("If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted.").

[6] See *Reid*, 345 Ga. App. at 245 (6). But see *Anthem*, 305 Ga. at 316 & n. 4 (2) (viewing the evidence in the light most favorable to the non-movant to a spoliation

duty to preserve the overwritten footage. The court found that Creek House had actual notice of impending litigation nine days after the fall.[7] By that time, any footage of the fall had been overwritten. Thus, Creek House was not on notice regarding potential litigation at the time the evidence was destroyed.[8]

The only evidence in the record that the overwritten video was recoverable at the time Creek House received the preservation letter was from the deposition of Creek House's video expert. However, the expert only testified that it was "possible" to recover overwritten recordings, and he could not estimate whether it could have

---

motion where the trial court did not hold an evidentiary hearing); *Cooper Tire*, 303 Ga. at 344 (3) (same).

[7] The trial court noted that Michael Provatas's transportation from the restaurant via an ambulance "might" have been sufficient to support a finding that Creek House had constructive notice of litigation, but the court proceeded to analyze the spoliation claim under the assumption that Creek House had actual notice the day it received the preservation letter. We therefore similarly analyze the spoliation issue from this date. Cf. *Phillips v. Harmon*, 297 Ga. 386, 397 (II) (774 SE2d 596) (2015) (providing a non-exhaustive list of factors that a trial court may consider in determining whether a defendant had constructive notice of litigation).

[8] See *Cooper Tire*, 303 Ga. at 345 (3) (trial court did not abuse its discretion in finding that a plaintiff did not have a duty to preserve destroyed evidence because plaintiff did not have notice of actual or contemplated litigation); *Aubain-Gray v. Hobby Lobby Stores*, 323 Ga. App. 672, 675-676 (2) (747 SE2d 684) (2013) (trial court did not abuse its discretion in finding that defendant did not have a duty to preserve overwritten video evidence because defendant did not have notice of actual or contemplated litigation).

6

been done in this case. This evidence is too speculative to support the trial court's spoliation order.[9]

2. Creek House also argues that the trial court's imposition of spoliation sanctions was too severe a penalty. We agree. We consider this issue even in light of our disposition in Division 1 because the trial court found that Creek House "should have preserved the entire video surveillance footage including any portion that was written over."

In considering the appropriate penalty for spoliation, the trial court should weigh the following five factors:

> (1) whether the party seeking sanctions was prejudiced as a result of the destroyed evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the destroying party acted in good or bad faith; and (5) the potential for abuse if any expert testimony about the destroyed evidence was not excluded.[10]

---

[9] See *Brumbelow v. City of Rome*, 215 Ga. App. 321, 322 (450 SE2d 345) (1994) ("An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.") (citations and punctuation omitted).

[10] *Wilkins v. City of Conyers*, 347 Ga. App. 469, 472 (819 SE2d 885) (2018) (citation and punctuation omitted).

The sanction given in this case, a jury instruction allowing for an adverse inference, is typically only "reserved for 'exceptional cases,' generally only those in which the party lost or destroyed material evidence intentionally in bad faith and thereby prejudiced the opposing party in an incurable way."[11] By contrast, "[t]he loss of relevant evidence due to mere negligence normally should result in lesser sanctions, if any at all."[12] That is because "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have."[13]

As noted above, the trial court found that Creek House "should have preserved the entire video surveillance footage including any portion that was written over." Creek House's failure to preserve unrelated footage from the days following the fall did not justify the sanction imposed in this case. Footage from the days following the fall is mostly irrelevant to Joyce Provatas's claims. Additionally, the preservation letter only requested that Creek House preserve footage from the day of the fall. As explained in Division 1 above, footage of the fall had already been overwritten by the

---

[11] *Anthem*, 305 Ga. at 316 (citation and punctuation omitted).

[12] Id. (citation and punctuation omitted).

[13] *Cooper Tire*, 303 Ga. at 347 n. 6 (3) (citation and punctuation omitted).

8

time Creek House received the preservation letter. While, with hindsight, the best practice would have been to immediately unplug the recording system upon receipt of the letter — so that the parties might have attempted to recover the overwritten footage — Creek House inherited the system from the previous restaurant, the manager did not know the password to the system, and there was no evidence in the record suggesting that the manager knew the footage would be overwritten if he failed to timely unplug the recording device. Given these facts, the trial court abused its discretion in imposing an adverse inference spoliation sanction.[14]

Accordingly, for the reasons stated above, we reverse the trial court's spoliation order.

*Judgment reversed. Markle, J., concurs. Colvin, J., concurs fully with Division 2 and concurs in judgment only as to Division 1*.

---

[14] See *Anthem*, 305 Ga. at 317 (2) (trial court abused its discretion in imposing adverse inference spoliation sanction because no evidence that defendant knew destroyed evidence was relevant and destroyed evidence appeared "entirely irrelevant" to the case).