**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 3, 2025**

# In the Court of Appeals of Georgia

A24A1849. MURPHY v. JANILINK CORP.

DOYLE, Presiding Judge.

In this trip and fall case, plaintiff Laurie Murphy appeals from the grant of summary judgment to Janilink Corporation ("Janilink"). Murphy contends that (1) the trial court erred by denying her motion for sanctions for spoliation based on Janilink's failure to preserve video evidence of her fall,(2) summary judgment was inappropriate due to the spoliation, and (3) fact questions remain as to Janilink's liability. Because the missing video is inapposite to other dispositive and undisputed evidence that defeats Murphy's claim, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable

conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Murphy was shopping with a friend at a janitorial supply store. The store was in the process of being stocked, and there were boxes on the floor throughout the store. Murphy pushed a shopping cart as they browsed the store for approximately 25 to 30 minutes. At some point, as she walking forward, "looking forward over this way because my friend is over here," Murphy tripped and fell on some boxes that were on the floor. Murphy deposed that she "tripped and fell," because her left foot tripped on some boxes; "boxes and all of that stuff that was on the floor . . . caused me to fall." Murphy injured her leg in the fall.

An associate was at the end of the aisle where she fell, and shortly after she fell, Murphy was assisted by staff and spoke to a manager who apologized and told Murphy to "focus on your health and get better." He also "went in the back . . . and said [to Murphy] he was able to view a video." Murphy was able to walk out of the store under her own power.

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Within days of Murphy's fall, Murphy's counsel sent a letter to Janilink seeking to preserve any video footage pertinent to the fall. Thereafter, Murphy sued Janilink, alleging that she "tripped and fell on items that were on the floor," and became injured when she landed on the ground. The complaint alleged that Janilink was negligent in keeping the premises safe and sought damages for Murphy's injuries.

Janilink answered and later moved for summary judgment. Meanwhile, as discovery ensued, Murphy requested the video recording, and Janilink responded that it was "in possession of video of [Murphy] entering the building, interacting with store employees and shopping, and exiting the building, but not of the alleged incident itself." After further maneuvering by the parties, including a motion to compel by Murphy, Janilink provided 48 different surveillance videos, none of which contained footage of the actual fall. When pressed by Murphy's counsel, Janilink's counsel replied, "[t]here is no footage of your client falling. I have provided video from every camera operational during the time of your client's visit." It is undisputed that there is a 42 second gap in the video that covers the time Murphy fell.[2] The available video

---

[2] At the hearing on the spoliation motion, Defense counsel argued that multiple cameras in several areas went down and came back on at the same time due to an overheating issue. Murphy retained an expert who could not opine why the video footage was missing, and Janilink provided an affidavit from an employee stating that

was provided to Murphy and depicts the scene immediately prior to and after the fall, resuming with Murphy on the floor.[3]

Based on this, Murphy moved for sanctions due to spoliation. Following a hearing on Murphy's motion and on Janilink's pending summary judgment motion, the trial court denied Murphy's motion for sanctions and granted summary judgment to Janilink based on the open and obvious nature of the box on which she tripped.

1. Murphy first argues that the trial court erred by denying her motion for sanctions for spoliation. Based on this record, we disagree.

"The term 'spoliation' refers to the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation."[4]

> [If] a trial court has determined that spoliation has occurred, the court should weigh the following five factors when deciding the appropriate penalty: (1) whether the party seeking sanctions was prejudiced as a result of the destroyed evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the destroying party acted in good or bad faith; and (5) the potential for

the surveillance system periodically went down due to power surges and overheating.

[3] None of the video evidence is in the record.

[4] (Punctuation omitted.) *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 339 (2) (812 SE2d 256) (2018).

abuse if any expert testimony about the destroyed evidence was not excluded.[5]

"[A] trial court has wide discretion in resolving spoliation issues, and such discretion will not be disturbed absent abuse."[6] "[W]hether spoliation occurred is a question of fact, to be decided by the court prior to trial."[7]

As a threshold matter, it is important to note that "[t]he spoliation motion was pending at the time of the hearing on the motion for summary judgment, and the issue was argued by both sides at considerable length in that hearing. Neither side called any witnesses."[8] In deciding the spoliation motion, "the trial court, without objection, considered matters outside the pleadings, including witness affidavits and depositions, but did not hold an evidentiary hearing at which the court could decide the credibility of those witnesses."[9] Under these circumstances, "the [spoliation] motion is properly

---

[5] *Knight v. Senoia Raceway Mgmt., Inc.*, 369 Ga. App. 798, 802 (3) (894 SE2d 621) (2023).

[6] (Punctuation omitted.) *Cooper Tire & Rubber Co.*, 303 Ga. at 343 (3).

[7] *In re Estate of Flournoy*, 373 Ga. App. 133, 138 (2) (907 SE2d 724) (2024).

[8] *Anthem Cos. v. Wills*, 305 Ga. 313, 315, n. 3 (1) (823 SE2d 781) (2019).

[9] (Citations omitted.) *Cooper Tire & Rubber Co.*, 303 Ga. at 343-344 (3).

reviewed under the standard applicable to a motion for summary judgment, and as the party opposing the motion, [Janilink was] entitled to have the evidence in the record viewed in the light most favorable to [it] and to have all reasonable inferences from the evidence drawn in [its] favor."[10]

Here, as noted above, affidavit and deposition testimony proffered by Janilink shows that Janilink's video system periodically shut down due to overheating. There was a plaintiff's expert who deposed that he could not determine the cause of the missing footage or whether it ever existed.[11] And despite Murphy's deposition testimony that a store manager "was able to view a video," neither Murphy nor the manager was specific as to whether the video captured her fall, and the record only leaves to speculation how the portion of the video became missing, assuming it ever existed.

---

[10] (Citations omitted.) Id. Accord *Anthem Cos.*, 305 Ga. at 316 (2) (reviewing the record in the light most favorable to the party defending a motion for spoliation sanctions); *City of Atlanta v. Perkins*, 372 Ga. App. 656, 664 (1) (a) (905 SE2d 838) (2024) (same).

[11] There is an affidavit from a different expert opining that the footage "ha[d] been altered and/or deleted," but Murphy has failed to make that expert available for deposition by Janilink.

Based on this record,[12] the trial court was authorized to find a lack of evidence showing that Janilink spoliated evidence such that sanctions were warranted. Murphy's expert did not testify in his deposition that he saw evidence of manipulation by Janilink, and Janilink has offered evidence that its cameras occasionally were faulty. The record also shows that Murphy was prejudiced minimally, if at all, because there were other witnesses available to testify as to the relevant circumstances of the fall, and the video footage that was provided to Murphy depicts the condition of the aisle shortly before and after the fall. Under these circumstances, the trial court did not abuse its discretion by declining to sanction Janilink based on spoliation of the evidence.[13]

2. Murphy next argues that the trial court erred because spoliation of the recording necessarily precludes summary judgment.[14] But, as held in Division 1, the record does not conclusively show whether Murphy's fall was even recorded, nor that

---

[12] The trial court did not make any explicit credibility rulings.

[13] See *Knight v. Senoia Raceway Mgmt., Inc.*, 369 Ga. App. at 802 (3).

[14] See *Baxley v. Hakiel Indus.*, 282 Ga. 312, 313 (647 SE2d 29) (2007) ("Proof of spoliation raises a rebuttable presumption against the spoliator that the evidence favored the spoliator's opponent, a fact rendering summary judgment inappropriate.") (punctuation omitted).

its absence was a result of any intentional conduct by or bad faith of Janilink. "It is axiomatic that in order for there to be spoliation, the evidence in question must have existed and been in the control of a party,"[15] and when viewed in the light most favorable to Janilink as the party opposing the spoliation motion,[16] the record does not demand a finding of spoliation giving rise to an inference precluding summary judgment as a matter of law.[17]

Further, as explained below in Division 3, "[t]he evidence which plaintiff maintains was spoliated or concealed related only to [her] prima facie case and could

---

[15] See generally *Sentry Select Ins. Co. v. Treadwell*, 318 Ga. App. 844, 847-848 (2) (c) (734 SE2d 818) (2012).

[16] See *Golden Pantry Food Stores, Inc. v. Bradley*, 371 Ga. App. 374, 378 (877 SE2d 274) (2024) ("[T]he proper standard of review required the trial court to view the evidence and all reasonable inferences from that evidence in favor of [the alleged spoliator] without making credibility determinations.").

[17] See id. at 848 (2) (c) ("To remedy the prejudice resulting from evidence spoliation, a trial court is authorized to craft a solution that fits the facts; the court may [among other things] charge the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator . . . . [O]n appeal we will not disturb a trial court's imposition of sanctions for evidence spoliation unless the trial court abused its discretion.").

not have affected the outcome of the underlying claim[],"[18] in light of the open and obvious nature of the box on which she tripped.

3. Murphy contends that fact questions remain as to whether Janilink violated its duty to maintain a safe premises. Based on the open and obvious nature of the box on which Murphy tripped, we disagree.

> To prevail on her claim against Janilink, Murphy

> must present some evidence demonstrating that (1) [Janilink] had actual or constructive knowledge of the hazard and (2) she lacked knowledge of the hazard despite her exercise of ordinary care and that her lack of knowledge was due to conditions within [Janilink's] control. This is because a landowner (or one managing the property on his behalf) is not an insurer of the safety of invitees.[19]

Further,

> [f]alling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go. Therefore, if an invitee knows of the condition or hazard that caused the injury, there is no duty on the part of the proprietor to warn the invitee[,] and there is no liability for

---

[18] *Sharpnack v. Hoffinger Indus.*, 231 Ga. App. 829, 831 (499 SE2d 363) (1998), cited by *Baxley*, 282 Ga. at 313.

[19] (Citations and punctuation omitted.) *Norman v. Jones Lang LaSalle Americas, Inc.*, 277 Ga. App. 621, 623-624 (627 SE2d 382) (2006).

resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of this knowledge, assumes the risks and dangers incident to the known condition.[20]

Here, there is photographic evidence showing the condition of the Janilink store. It is an industrial janitorial supply store, and there are boxes and various items such as carts and cleaning equipment stored on shelves and on the floor throughout the store. Murphy deposed that prior to the fall, she browsed the store for approximately 25 to 30 minutes , and during this time, she had to negotiate the aisles and pathways, including those along which boxes and equipment were present. Murphy alleges nothing hidden about the nature of the items or boxes on the floor, nor does she invoke a distraction[21]; the boxes were characteristic of the conditions throughout the store that Murphy observed throughout her visit. Under these circumstances, even though routine issues of negligence are normally for the jury to

---

[20] (Punctuation omitted.) Id. at 624.

[21] See generally *Robinson v. Kroger Co.*, 268 Ga. 735, 746 (2) (a) (493 SE2d 403) (1997) (explaining that the distraction doctrine applies to conduct or displays that are "of such a nature that the defendant might have anticipated that it would divert an invitee's attention").

resolve,[22] Murphy cannot demonstrate that Janilink had superior knowledge of the conspicuous presence of boxes throughout the store, including those on which she tripped.[23]

> The true basis for liability . . . is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm. In order to recover, the plaintiff must prove that the defendant had superior knowledge of a dangerous condition that was unknown to the plaintiff and that caused the plaintiff's injuries.[24]

Because nothing obstructed Murphy's view of the boxes, the lighting was adequate, and there is no evidence that they were suddenly placed in front of Murphy as she walked, Janilink was entitled to assume that she would see them and realize the

---

[22] See id. at 739 (1).

[23] See, e.g., *Crebs v. Bass Pro Outdoor World*, 360 Ga. App. 121, 123 (860 SE2d 802) (2021) ("[I]n everyday life, persons are required to negotiate floors, steps, and doorways, and the defendants are not responsible for hazards that were open and obvious[] and could have been avoided in the use of ordinary care.") (punctuation omitted). See also *Rentz v. Prince of Albany, Inc.*, 340 Ga. App. 388, 390 (1) (797 SE2d 254) (2017) (describing a corn hole game as a static condition: "[a] static condition is one that does not change and is dangerous only if someone fails to see it and walks into it. If nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks.").

[24] (Citations and punctuation omitted.) *Green v. Home Depot U.S.A., Inc.*, 277 Ga. App. 779, 781 (1) (627 SE2d 836) (2006).

tripping risk, particularly as she perused the store for 25 to 30 minutes prior to tripping.[25] Thus, the undisputed evidence plainly and palpably shows that Murphy had equal knowledge of the hazard on which she tripped. Accordingly, the trial court did not err by granting summary judgment to Janilink.

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

[25] See *Rentz*, 340 Ga. App. at 390-391 (2).