**2026 UT App 41**

# THE UTAH COURT OF APPEALS

MARTIN O'LOUGHLIN,
Appellant,

*v.*

ASEA, LLC; REOXCYN MEDICAL RESEARCH, INC.; REOXCYN
DISCOVERIES GROUP, INC.; REOXCYN INNOVATION GROUP, LLC;
MICHAEL SORENSEN; AND ASEA ENTERPRISES, LLC,
Appellees.

Opinion
No. 20231088-CA
Filed March 19, 2026

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 190400761

Troy L. Booher and Caroline A. Olsen,
Attorneys for Appellant

H. Scott Jacobson, Graden P. Jackson, and
Axel Trumbo, Attorneys for Appellees Reoxcyn
Medical Research, Inc.; Reoxcyn Discoveries
Group, Inc.; Reoxcyn Innovation Group, LLC; and
Michael Sorensen

Cameron M. Hancock, Justin W. Starr, Michael A.
Eixenberger, and Christopher A. Bates, Attorneys for
Appellees ASEA Enterprises, LLC and ASEA, LLC

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

ORME, Judge:

¶1 Martin O'Loughlin was an early investor in ASEA,[1] a pharmaceutical supplement company. ASEA's founders, Michael Sorensen among them, assured O'Loughlin that the company owned the intellectual property behind its products. But after O'Loughlin learned that this was not the case, he sued ASEA, Sorensen, and the company that actually owned the intellectual property—Reoxcyn.[2] Before trial, ASEA filed a motion in limine to exclude O'Loughlin's evidence of damages due to his failure to initially disclose the methodology for calculating them. The district court granted the motion in limine and, concluding that the motion was dispositive, dismissed the case.

¶2 On appeal, O'Loughlin challenges these rulings by the district court and its award of attorney fees. We affirm the court's grant of the motion in limine and dismissal of the case. We also affirm the court's attorney fees award to ASEA and its decision to award fees to Sorensen, but we vacate Reoxcyn's award. And because the attorney fees were not originally allocated as between Sorensen and Reoxcyn, we remand for the district court to determine the amount due to Sorensen individually.

## BACKGROUND[3]

¶3 In 2008, Sorensen and his fellow founders courted O'Loughlin's investment in ASEA, representing that the new company would develop pharmaceutical supplements.

---

1. We refer to the ASEA entities collectively.

2. We also refer to the Reoxcyn entities collectively.

3. In reviewing what is effectively the district court's grant of summary judgment, we recite the facts "in the light most favorable to the nonmoving party." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

O'Loughlin eventually invested $100,000 in ASEA in exchange for a 1% interest in the company.[4] O'Loughlin later claimed that it was crucial to him that ASEA own the intellectual property behind its products and that Sorensen and others had assured him that it did. But years later, O'Loughlin learned that this was not the case and ASEA had actually been making royalty payments to license the intellectual property from Reoxcyn. He also learned that other ASEA founders were linked to Reoxcyn, with Sorensen serving as Reoxcyn's CEO.

¶4    O'Loughlin sued ASEA and Reoxcyn, amending the complaint twice to add Sorensen as a defendant and to raise additional claims.[5] In his second amended complaint, O'Loughlin raised thirteen claims.[6] His first cause of action, titled "Breach of Operating Agreement—§ 48-3a-407(3)(c)," alleged that ASEA had transferred its intellectual property to Reoxcyn "outside the ordinary course of [ASEA's] activities and affairs," violating the Utah Code and harming ASEA's shareholders. The other claims alleged breach of the duties of loyalty and care, fraudulent transfer, fraudulent and negligent misrepresentation, interference with contract, breach of the covenant of good faith and fair dealing, violation of the Utah Trade Secrets Act, conversion, unjust enrichment, and civil conspiracy. O'Loughlin directed some of these claims against ASEA; some against Sorensen; and some against ASEA, Sorensen, and Reoxcyn (collectively, the

---

4. O'Loughlin transferred the resultant stocks to three different trusts of which he is a trustee. He sued in his capacity as trustee.

5. Several of O'Loughlin's claims against Sorensen and Reoxcyn were dismissed prior to the filing of O'Loughlin's second amended complaint.

6. O'Loughlin raised both direct and derivative claims, though he later elected to pursue only the direct claims.

Defendants). O'Loughlin sought damages as well as declaratory and injunctive relief.[7]

*Discovery*

¶5 Once discovery began, O'Loughlin filed his initial disclosures per rule 26(a)(1) of the Utah Rules of Civil Procedure. The disclosures included a section titled "Computation of Damages" that stated, "A computation of damages as contemplated by Rule 26(a)(1) is not available at this time because said information is in the possession of Defendants."

¶6 In its first set of discovery requests, ASEA asked O'Loughlin to "[i]dentify and describe in detail and with specificity the nature and dollar value of all damages . . . together with a calculation and methodology used for determining the alleged damages." O'Loughlin did not do so and instead objected to the request, stating, "The point of this legal action is to uncover facts hidden by [the] Defendants" in order to establish his various claims and "to determine the damages" incurred.

¶7 But O'Loughlin did not make his first set of discovery requests for any such information from the Defendants until December 3, 2021—though fact discovery was set to end on February 25, 2022.[8] After receiving ASEA's response—including its profit and loss statements—O'Loughlin served his expert

---

7. O'Loughlin later filed a motion to further amend the complaint, which the district court denied.

8. Due to several delays, the district court had reset discovery in June 2020. O'Loughlin had made discovery requests prior to June 2020 but apparently did not renew them. Fact discovery was set to end on February 25, 2022, but the parties apparently stipulated to an extension of that deadline until March 4, 2022, "to respond to certain outstanding written discovery requests."

witness disclosure. The disclosure listed an expert (Expert) who would opine that O'Loughlin's damages were as follows:

> 1% of Reoxcyn Royalty Payments, 2009–2020 = $409,100
>
> Interest on $409,100.70, at 13.87%, 2009–2021 = $436,255
>
> Diminished Value of Plaintiff's Shares—$2,045,504
>
> Income made from ASEA IP and Patents by 3rd Parties—unknown
>
> Income made from ASEA IP and Patents by Reoxcyn Entities—unknown
>
> Value of 1% Interest in Reoxcyn and related entities—unknown
>
> Other damages from corporate raiding—unknown

¶8 After submitting his expert disclosure, O'Loughlin was deposed by the Defendants. The only measure of damages he discussed in detail was his claim that, as a member of ASEA, he had "proportional owner[ship] in Reoxcyn" and was entitled to "one percent of the royalties less expenses" payable by Reoxcyn.

¶9 In several later supplements to his initial disclosures, O'Loughlin did not attempt to further clarify his damages claim. But on March 4, 2022, the last day of fact discovery, O'Loughlin supplemented his expert disclosure with a worksheet containing the figures on which Expert's damages estimates were based.

¶10 Expert was also eventually deposed by the Defendants. Expert discussed four theories for calculating damages, three of

which were later excluded by the court on ASEA's motion.[9] On the remaining theory, which Expert confirmed dealt with the "diminished value of" O'Loughlin's 1% interest in ASEA, he stated that he had calculated that O'Loughlin would have received $409,101 "either through dividends or increased value of the shares." When asked by ASEA's counsel whether Expert had reviewed ASEA's operating agreement "in connection with making distributions or dividends" or whether he was "aware of any facts or evidence where the distributions would have been paid to [O'Loughlin] if they hadn't been paid as royalties to Reoxcyn," Expert replied that he "assum[ed]" that the money would have been distributed as he had stated. The court later termed this theory of damages "the lost distributions theory."

*Summary Judgment Motion and Motions in Limine*

¶11  After discovery, ASEA—joined by Sorensen and Reoxcyn—moved for summary judgment, arguing, in relevant part, that based largely on the potential exclusion of Expert's opinions, O'Loughlin could not present evidence of damages. The district court denied the motion, concluding that O'Loughlin had provided sufficient evidence on damages to withstand summary judgment.

¶12  ASEA then filed a motion in limine—again joined by Sorensen and Reoxcyn—to exclude all of O'Loughlin's damages evidence. ASEA argued that under rule 26(a)(1)(C) of the Utah Rules of Civil Procedure, O'Loughlin had failed to disclose the lost distributions theory of damages and that his later supplements and expert disclosure did not adequately remedy

---

9. ASEA, joined by Sorensen and Reoxcyn, argued that Expert's four theories should be excluded under rule 702 of the Utah Rules of Evidence. The district court later excluded three of Expert's theories on this basis, though it denied the motion with respect to a fourth.

the failure. ASEA further argued that because O'Loughlin's failure to disclose was harmful to the Defendants and not supported by good cause, O'Loughlin should be "barred from presenting *any* evidence of damages" at trial. ASEA also filed a separate motion in limine to prevent O'Loughlin's witnesses from testifying at trial, arguing they were not timely disclosed.

¶13     At the hearing on both motions, the district court asked ASEA's counsel whether granting the motion in limine on damages would render the motion to exclude O'Loughlin's witnesses moot. When ASEA's counsel affirmed that it would, the court asked, "This is . . . dispositive, in other words?" ASEA's counsel said, "Yes," and then asked the court to grant the motion in limine on damages and "to throw out the case because there is no damages . . . evidence that they should be entitled to present at trial." O'Loughlin's counsel did not address this request at all, much less argue that O'Loughlin's equitable claims should survive the intended dismissal.

¶14     In its written ruling that followed the hearing, the court emphasized,

> Rule 26 of the Utah Rules of Civil Procedure required [O'Loughlin], without waiting for a discovery request, to disclose a computation of any damages claimed, and a copy of all discoverable documents or evidentiary material on which such computation is based, including materials about the nature and extent of the injuries suffered.

The court recognized that "[w]ithout the profit and loss statements provided to [O'Loughlin] by [the] Defendants," O'Loughlin "could not compute the damages at $409,101." But the court noted that O'Loughlin "did not request this information until . . . just weeks before the close of fact discovery." The court also noted that O'Loughlin provided a computation of damages

prior to his deposition but that the actual worksheet containing the data on which that computation was based was not provided until after the close of fact discovery.

¶15 Accordingly, the court assumed that O'Loughlin had good cause for his "failure to disclose a numeric computation of damages" in his initial disclosures. But the court found that O'Loughlin had "not shown good cause for failing to disclose the method or theory of computing damages." The court reiterated that O'Loughlin's lost distributions theory of damages was "as follows: had ASEA not paid the Reoxcyn royalty payments, ASEA would have had more money to pay distributions to its shareholders. Therefore, [O'Loughlin was] entitled to one-percent of the saved royalty payments that would have otherwise been available to ASEA to pay distributions." The court noted that O'Loughlin had not disclosed this theory in his disclosures and that "[n]othing prevented" him from doing so. The court then found that this failure to disclose was not harmless because the Defendants "were deprived of the opportunity to obtain . . . concessions about the obvious limitations of the undisclosed theory" of damages during Expert's deposition. And the court found that "[w]hile the documents necessary to compute the amount of damages numerically were in [the] Defendants' possession until the waning days of fact discovery, this did not prevent [O'Loughlin] from disclosing the method or theory of computation."

¶16 Accordingly, the court granted the motion in limine to exclude O'Loughlin's evidence of damages, and concluding that this ruling was "dispositive of [O'Loughlin]'s claims," it dismissed the entire case with prejudice.

*Attorney Fees*

¶17 Following the dismissal of the case, the Defendants requested attorney fees under ASEA's 2009 operating agreement

or, alternatively, under either the 2011 or 2012 amended operating agreements. The 2009 operating agreement authorized an award of fees to the prevailing party in "any action, litigation or proceeding . . . arising out of or in relation to" its terms, while the 2012 amended and restated agreement—which ASEA argued was the operative agreement—authorized fees to the prevailing party only for "a breach or dispute arising under" its terms.

¶18    In its attorney fees ruling, the court first concluded that the 2009 operating agreement governed, as O'Loughlin's interest in ASEA was "later memorialized in" that agreement. The court also pointed to O'Loughlin's first cause of action, which was titled "Breach of Operating Agreement—§ 48-3a-407(3)(c)" and which alleged that ASEA's transfer of its intellectual property to Reoxcyn was outside of ASEA's ordinary course of business. The court stated, "This cause of action presupposed the existence of an applicable operating agreement." Thus, the court reasoned that the first cause of action "related to" the 2009 operating agreement.

¶19    The court then concluded that O'Loughlin's remaining claims were "all related legal theories arising from the same core set of facts on which the first cause of action for breach of the operating agreement rested." The court stated,

> These facts are that Mr. O'Loughlin was fraudulently induced to purchase a one-percent interest in what became ASEA . . . based on the misrepresentation that the company owned or would own valuable intellectual property when, in fact, the intellectual property was never owned by the company or had been transferred to [Reoxcyn] and that the Defendants later lied to cover up this fraud.

¶20    The court also held that while ASEA and Sorensen were parties to the 2009 operating agreement, Reoxcyn was not, and

"[w]ithout party status," Reoxcyn was "not entitled to recover attorneys' fees, costs, or expenses under the 2009 Operating Agreement." The court further determined that "[t]he question of whether [Reoxcyn] should nevertheless be entitled to recover attorneys' fees and expenses under the 2009 Operating Agreement because [O'Loughlin] sued [Reoxcyn] for breach of that agreement [was] not adequately briefed" and, thus, the court declined to address it. But—somewhat perplexingly, given its prior conclusions regarding Reoxcyn—the court then granted attorney fees to ASEA, Sorensen, and Reoxcyn. And the court found that there was "no need to allocate fees incurred" between Sorensen and "his entities, the Reoxcyn Entities." In its final judgment, the court awarded $489,911.13 to ASEA and $118,042.40 to Sorensen "on behalf of himself and" Reoxcyn.

¶21 O'Loughlin appeals.

ISSUES AND STANDARDS OF REVIEW

¶22 First, O'Loughlin challenges the district court's grant of ASEA's motion in limine to exclude his evidence of damages—a decision we review for an abuse of discretion. *See S6, LLC v. Wing Enters., Inc.*, 2024 UT App 105, ¶ 23, 556 P.3d 100. Relatedly, he also challenges the court's dismissal of the entire case based on the motion in limine ruling. Because this dismissal had "the effect of a grant of summary judgment, we treat it that way," reviewing it for correctness and "affording no deference to the district court's analysis." *Build, Inc. v. Utah Dep't of Transp.*, 2018 UT 34, ¶ 18 & n.3, 428 P.3d 995.

¶23 Second, O'Loughlin argues that the district court erred in awarding attorney fees to the Defendants. "The award of attorney fees is a matter of law, which we review for correctness." *Globe*

*Contracting LLC v. Hour*, 2025 UT App 98, ¶ 35, 575 P.3d 235 (quotation simplified).[10]

ANALYSIS

I. Evidence of Damages

¶24    O'Loughlin challenges the district court's grant of the motion in limine to exclude his evidence of damages and its subsequent dismissal of his case. His arguments are unavailing.

A.    Motion in Limine

¶25    Under rule 26 of the Utah Rules of Civil Procedure, a plaintiff "must, without waiting for a discovery request, serve on the other parties . . . a computation of any damages claimed and a copy of all discoverable documents or evidentiary material on which such computation is based, including materials about the nature and extent of injuries suffered." Utah R. Civ. P. 26(a)(1)(C). The disclosure rules recognize "that parties may not know, at the outset of a case, exactly what their damages amount to, and that 'damages often require additional discovery.'" *Butler v. Mediaport Ent. Inc.*, 2022 UT App 37, ¶ 20, 508 P.3d 619 (quoting Utah R. Civ. P. 26 advisory committee's note to 2011 amendment). "These required initial damages disclosures need not, in every case, contain a to-the-penny calculation" but they do require, "at a minimum, a disclosure that damages are in fact being claimed, the categories of any such damages, and a description of the method

---

10. O'Loughlin raises other issues on appeal, arguing that the district court erred in denying him further leave to amend his complaint and in excluding two of Expert's damages theories. Because we affirm the exclusion of all of O'Loughlin's evidence of damages and the court's ultimate dismissal of the case, *see infra* Part I, we need not address these other issues.

by which the party intends to compute those damages." *Id.* ¶¶ 20-22. "In other words, both the fact of damages and the method for calculating the amount of damages must be apparent in the initial disclosures." *S6, LLC v. Wing Enters., Inc.*, 2024 UT App 105, ¶ 49, 556 P.3d 100 (quotation simplified).

¶26　The disclosure rules also "require timely supplementation of" damages disclosures. *Butler*, 2022 UT App 37, ¶ 21. *See* Utah R. Civ. P. 26(d)(5) ("If a party learns that a disclosure or response is incomplete or incorrect in some important way, the party must timely serve on the other parties the additional or correct information if it has not been made known to the other parties."). "If a party fails to disclose or to supplement timely a disclosure, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." Utah R. Civ. P. 26(d)(4). In fact, "[w]hen a party fails to make timely disclosure, the district court is *required* to impose discovery sanctions on that party" in the absence of a showing of good cause or harmlessness. *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 35, 215 P.3d 933 (emphasis added).

¶27　O'Loughlin argues that he had good cause for failing to disclose Expert's methodology for calculating damages and that the failure was harmless. We address these arguments in turn.

1.　　Good Cause

¶28　The district court assumed that O'Loughlin had good cause for failing to initially disclose an exact *numeric computation* of his damages. But the court found, with our emphasis, that "[n]othing prevented" him "from disclosing the *method or theory* of computation." O'Loughlin argues he should have been "excused from committing to a particular methodology" for calculating damages because "the specifics of his methodology depended on

information that [the Defendants] had in their [possession] but did not produce until January 2022."

¶29  But a plaintiff must commit to a particular methodology for calculating damages. This is a "crucial[]" piece of initial disclosures. *Keystone Ins. Agency v. Inside Ins.*, 2019 UT 20, ¶ 17, 445 P.3d 434. "A party is not excused from making disclosures or responses because the party has not completed investigating the case." *Butler*, 2022 UT App 37, ¶ 20 (quotation simplified). And "if factual contentions about the amount of damages require further investigation or discovery, the party must undertake that investigation as early in the litigation process as is practicable." *Sleepy Holdings LLC v. Mountain West Title*, 2016 UT App 62, ¶ 14, 370 P.3d 963 (quotation simplified).

¶30  The onus was on O'Loughlin to provide his lost distributions theory of damages in his initial disclosures. *See S6, LLC v. Wing Enters., Inc.*, 2024 UT App 105, ¶ 49, 556 P.3d 100 (stating that "both the fact of damages and the method for calculating the amount of damages *must* be apparent *in the initial disclosures*") (emphasis added; quotation otherwise simplified). Though O'Loughlin claimed that his ability to do so hinged on information in the Defendants' possession, and he faults ASEA for not providing its profit and loss statements until January 2022, "only weeks before the close of fact discovery," O'Loughlin did not make his first set of discovery requests until early December 2021. And despite ASEA's request that O'Loughlin clarify his initial disclosure of damages, the several supplements filed after O'Loughlin received this information from ASEA did not address damages.

¶31  We thus see no abuse of discretion in the district court's conclusion that O'Loughlin lacked good cause for failing to disclose his lost distributions theory of damages at the outset of his case.

2.      Harmlessness

¶32    The district court also concluded that O'Loughlin's failure to disclose was not harmless because the Defendants "were deprived of the opportunity to obtain . . . concessions about the obvious limitations of the undisclosed theory" of damages during Expert's deposition. O'Loughlin argues that the Defendants were not actually harmed because they had notice of the lost distributions theory in his complaints, discovery responses, and expert disclosures. And he argues that "any information imbalance favored [the Defendants], not O'Loughlin."

¶33    "We have identified several factors for courts to consider in assessing harmlessness in this context, all of which have to do with the extent of impairment to a party's ability to build a defense during the discovery period and to make decisions about a case that are proportionate to its size and scope." *Butler*, 2022 UT App 37, ¶ 33 (quotation simplified). "Specifically, in this context courts should consider whether a party, despite its opponent's poor disclosures, was able to (1) question witnesses during discovery, (2) figure out the case's tier status under rule 26(c), (3) understand the nature and quantity of the plaintiff's claimed damages, and (4) understand the scope and cost of the litigation pursued." *Id.* (quotation simplified).

¶34    "[C]ourts assessing harmlessness should [also] consider the point in time at which additional information that may point toward harmlessness was received by the opposing party." *Id.* ¶ 34. "Where additional illuminating information was received by an opposing party relatively early during the discovery period, within enough time to allow that party to use that information while taking depositions and propounding other discovery requests, then any inadequacies in a party's damages disclosures may turn out to be harmless." *Id.* (quotation simplified). "But where a party waits until the twilight hours of fact discovery or, worse, until the close of expert discovery to provide illuminating

information, thereby depriving the opposing party of any meaningful opportunity to use" that information during discovery, "the faulty disclosures may well turn out to be harmful." *Id.* (quotation simplified).

¶35     The first time that O'Loughlin directly addressed damages with specificity was in his expert disclosure. The disclosure listed O'Loughlin's purported damages as follows:

> 1% of Reoxcyn Royalty Payments, 2009–2020 = $409,100
>
> Interest on $409,100.70, at 13.87%, 2009–2021 = $436,255
>
> Diminished Value of Plaintiff's Shares—$2,045,504
>
> Income made from ASEA IP and Patents by 3rd Parties—unknown
>
> Income made from ASEA IP and Patents by Reoxcyn Entities—unknown
>
> Value of 1% Interest in Reoxcyn and related entities—unknown
>
> Other damages from corporate raiding—unknown

O'Loughlin did not supplement this disclosure with the worksheet showing the data on which Expert based these damages until the last day of fact discovery. Nor did Expert discuss the lost distributions theory of damages until his deposition months later.

¶36     "Regarding harmlessness, the key question is whether a plaintiff's failure to disclose its methods of computing damages impaired the defense's ability to properly build a defense against

the damages claimed." *Vanlaningham v. Hart*, 2021 UT App 95, ¶ 21, 498 P.3d 27 (quotation simplified). Here, O'Loughlin did not provide illuminating information regarding the methodology for calculating damages until the "twilight hours of fact discovery" and well into the expert discovery period. *See Butler*, 2022 UT App 37, ¶ 34 (quotation simplified). "We recognize that assessment of harm in this context is a nuanced matter, and that it is sometimes difficult to tell if a defendant has really been harmed or is just feigning harm for the purposes of trying to get the plaintiff's damages claims dismissed on non-merits grounds prior to trial." *Id.* ¶ 48. But—importantly—we also "recognize that a district court will almost always have a better vantage point than we do to make such a call." *Id. See Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 35, 215 P.3d 933 ("We give the district court a great deal of latitude in determining the most fair and efficient manner to conduct court business because the district court judge is in the best position to evaluate the status of his or her cases, as well as the attitudes, motives, and credibility of the parties.") (quotation simplified). O'Loughlin has not overcome the great deference owed the district court's harmlessness determination.

¶37    Because O'Loughlin did not demonstrate good cause or harmlessness, the district court did not exceed its discretion in granting the motion in limine to exclude O'Loughlin's evidence of damages.

B.    Dismissal of the Case

¶38    The district court also did not err in dismissing the case based on its grant of the motion in limine. O'Loughlin stresses that the motion in limine was a "limited evidentiary motion" and the court should not have dismissed the case without an opportunity for full briefing on whether it was dispositive. But our case law says otherwise.

¶39     In *Build, Inc. v. Utah Department of Transportation*, 2018 UT 34, 428 P.3d 995, the district court dismissed the case after granting a motion in limine to exclude a construction company's damages witnesses. *See id.* ¶ 17. On appeal, our Supreme Court recognized that "it may have been preferable for the district court to order briefing on the question whether the decision granting the motion in limine should lead to the summary dismissal of the . . . damages claim." *Id.* ¶ 45 (quotation simplified). Nevertheless, the Court concluded that any error in the district court's failure to do so was harmless because after "the only two witnesses who might have testified" about damages "were excluded, the claim was left without a leg to stand on," and it was "inevitable" the court "would have dismissed the claim even if it had ordered full briefing on a motion for summary judgment." *Id.* ¶¶ 46, 52, 55.

¶40     And in *Butler v. Mediaport Entertainment Inc.*, 2022 UT App 37, 508 P.3d 619, the district court dismissed an employee's counterclaims against his former employer after granting the employer's motion in limine to exclude the employee's evidence of damages. *See id.* ¶ 13. We affirmed the court's grant of the motion in limine, and "given that [the employee] therefore had no evidence to support those counterclaims," we held that there was "no error in the court's decision to dismiss them summarily." *Id.* ¶ 49. While we recognized that "parties should not be able to dodge dispositive motion deadlines by cloaking summary judgment motions under a motion in limine label," we stated that "the court acted appropriately, not to mention efficiently, in choosing to take up the matter prior to trial" instead of "wait[ing] until the close of [the employee's] case-in-chief to grant an inevitable directed verdict for lack of proof of damages." *Id.* ¶ 16 n.2.

¶41     Here, once O'Loughlin's evidence of damages was excluded, his claims were "left without a leg to stand on." *See*

*Build, Inc.*, 2018 UT 34, ¶ 55. Thus, the district court properly dismissed them.[11]

¶42 In sum, we affirm the court's grant of the motion in limine to exclude O'Loughlin's evidence of damages and its subsequent dismissal of the case.

## II. Attorney Fees

¶43 O'Loughlin also challenges the district court's attorney fees award. We affirm the award in part and vacate and remand the award in part.

¶44 "In Utah, attorney fees are awarded only if authorized by statute or contract. If provided for by contract, attorney fees are awarded in accordance with the terms of the contract." *Capozzoli v. Madden*, 2024 UT App 176, ¶ 48, 561 P.3d 727 (quotation simplified). Here, the district court awarded attorney fees under ASEA's 2009 operating agreement, which authorized fees to the prevailing party in "any action, litigation or proceeding . . . arising out of or in relation to" the agreement. The court determined that

---

11. O'Loughlin argues that it was procedurally inappropriate to dismiss the entire case where equitable claims—which did not require damages disclosure—remained. But it was incumbent on O'Loughlin to alert the court to the persistence of these claims when the court considered whether to "throw out" the case. Because the court was not asked to determine whether these equitable claims prevented outright dismissal, this issue is unpreserved, and we do not address it further. *See True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 24, 427 P.3d 338 ("For an issue to be preserved, a party must raise it before the district court specifically, in a timely manner, and with support by evidence and relevant legal authority, such that the issue has been presented to the trial court in such a way that the trial court has an opportunity to rule on it.") (quotation simplified).

while ASEA and Sorensen were parties to the 2009 operating agreement, Reoxcyn was not, and "[w]ithout party status" it was "not entitled to recover attorneys' fees, costs, or expenses under the 2009 Operating Agreement." The court then ruled that the question of whether Reoxcyn was "nevertheless . . . entitled to recover attorneys' fees and expenses under the 2009 Operating Agreement because [O'Loughlin] sued [Reoxcyn] for breach of that agreement [was] not adequately briefed," and thus the court declined to address it. But concluding that O'Loughlin's first cause of action "related to" the 2009 operating agreement and his remaining claims "ar[ose] from the same core set of facts on which the first cause of action . . . rested," the court then awarded fees to ASEA and to "Sorensen and his entities, the Reoxcyn Entities." In its final judgment, the court awarded $489,911.13 to ASEA and $118,042.40 to "Sorensen—on behalf of himself and" Reoxcyn.

¶45    O'Loughlin first argues that instead of relying on the 2009 operating agreement, the district court should have looked to the 2012 amended operating agreement, which authorizes an award of fees to the "prevailing party" for "a breach or dispute arising under" its terms. We need not definitively decide which operating agreement governs because an award of fees was proper under either one.

¶46    Again, with our emphasis, the 2009 operating agreement authorized fees to the prevailing party in "any action, litigation or proceeding . . . *arising out of or in relation to*" its terms. The 2012 operating agreement, with our emphasis, authorized fees only for "a breach or dispute *arising under*" its terms. We see no practical difference between the phrase "arising out of" in the 2009 operating agreement and "arising under" in the 2012 operating agreement. While the district court concluded that O'Loughlin's first cause of action "related to" the 2009 operating agreement and that his other claims "arose out of" a common core of facts with that first claim, we may affirm on any basis apparent in the record. *See Okelberry v. West Daniels Land Ass'n*, 2005 UT App 327, ¶ 11,

120 P.3d 34. And here, it is apparent that O'Loughlin's claims could have arisen under—or had a common core of facts with claims that did arise under—either operating agreement.

¶47 Our Supreme Court has recognized that "there is no magic, nor hidden meaning, in the phrase 'relating to or arising out of.'" *Scott v. Wingate Wilderness Therapy, LLC*, 2021 UT 28, ¶ 64, 493 P.3d 592 (quotation simplified). In particular, "the words 'arising out of' are very broad, general and comprehensive" and are "commonly understood to mean originating from, growing out of, or flowing from." *Taylor v. Ogden City School Dist.*, 927 P.2d 159, 163 (Utah 1996) (quotation simplified). O'Loughlin's first cause of action was titled "Breach of Operating Agreement— § 48-3a-407(3)(c)." And though O'Loughlin now argues that this was a mistake, the title persisted through all of O'Loughlin's amended and proposed amended complaints.

¶48 Moreover, as the district court recognized, this claim presupposed the existence of an operating agreement, because O'Loughlin articulated the claim as involving a transfer that did not comply with ASEA's ordinary business practice. *Cf. HITORQ LLC v. TCC Veterinary Services Inc.*, 2020 UT App 123, ¶ 50, 473 P.3d 1177 (concluding that "whether Plaintiffs were being granted distributions and receiving all to which they were entitled under the Operating Agreement inherently involves enforcing the Operating Agreement because it amounts to a process of compelling compliance with the agreement" as the provisions "establish and define Plaintiffs' rights") (quotation simplified), *aff'd*, 2021 UT 69, 502 P.3d 281. Thus, O'Loughlin's first cause of action could have arisen under either of ASEA's operating agreements.

¶49 O'Loughlin's other causes of action involved ASEA's purported ownership of the intellectual property, its alleged transfer to Reoxcyn, and the resultant harm to ASEA's investors. "When a dispute involves multiple claims involving a common

core of facts and related legal theories, and a party prevails on at least some of its claims, it is entitled to compensation for all attorney fees reasonably incurred in the litigation." *Airstar Corp. v. Keystone Aviation LLC*, 2022 UT App 73, ¶ 96, 514 P.3d 568 (quotation simplified). "Put differently, if a compensable claim is inextricably intertwined with a noncompensable claim, fees related to the noncompensable claim are appropriately included in the fee calculation." *Id.* (quotation simplified). By this logic, because O'Loughlin's other claims have a common core of facts with his first cause of action the claims are all "inextricably intertwined." *See id.* We are not persuaded by O'Loughlin's attempts to frame his claims more narrowly.

¶50 As parties to the operating agreements and prevailing parties in this litigation, ASEA and Sorensen were entitled to their respective attorney fees. But O'Loughlin argues that Reoxcyn was not entitled to attorney fees as it was not a party to either of the operating agreements. We agree on this point.

¶51 The district court determined that Reoxcyn was not a party to the 2009 operating agreement (and, by that logic, not a party to any other ASEA operating agreement). And the court also determined that Reoxcyn had not adequately briefed whether it "should nevertheless be entitled to recover attorneys' fees and expenses under the 2009 Operating Agreement because Plaintiffs sued the Reoxcyn Entities for breach of that agreement." But the court then awarded attorney fees to "Sorensen and . . . the Reoxcyn Entities" anyway, without explaining the legal justification or requiring allocation between them. We fail to see how, if Reoxcyn was not a party to any operating agreement and had inadequately briefed whether it was nonetheless entitled to

fees, it should be awarded fees here. Accordingly, we vacate Reoxcyn's attorney fees award.[12]

¶52   In sum, the district court properly awarded attorney fees to ASEA and Sorensen but not to Reoxcyn. We thus vacate Reoxcyn's fee award. And because the court did not allocate an amount as between Reoxcyn and Sorensen, we remand for the court to determine the fees due to Sorensen individually.[13]

---

12. Reoxcyn argues that it was entitled to attorney fees under Utah's reciprocal fee statute, which provides that "[a] court may award costs and attorney fees to either party that prevails in a civil action based upon any . . . written contract" when the contract provisions "allow at least one party to recover attorney fees." Utah Code Ann. § 78B-5-826 (LexisNexis 2022). *See Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 32, 285 P.3d 766. But the district court found that Reoxcyn was not a party to the 2009 operating agreement, and it ruled that the question of whether it "should nevertheless be entitled to recover attorneys' fees and expenses [was] not adequately briefed." This ruling—which Reoxcyn does not challenge on appeal—effectively forecloses Reoxcyn's argument.

13. The Defendants also request attorney fees incurred on appeal. Because we affirm the district court's award of fees to ASEA and Sorensen, we remand for the court to enter an additional award of the fees ASEA and Sorensen reasonably incurred on appeal. *See Meade Recovery Services LLC v. Davidson*, 2025 UT App 97, ¶ 35, 575 P.3d 228 ("When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal.") (quotation simplified), *cert. denied*, 581 P.3d 552 (Utah 2025). But because we reverse the district court's award of fees to Reoxcyn, it is not entitled to appellate attorney fees.

CONCLUSION

¶53    The district court did not abuse its discretion in granting ASEA's motion in limine to exclude O'Loughlin's evidence of damages. And we affirm the court's dismissal of the case on that basis. We also affirm the court's award of attorney fees to ASEA and its decision to award fees to Sorensen, but we vacate Reoxcyn's attorney fee award. Thus, we remand for the district court to determine the amount due to Sorensen individually, since his award was lumped in with Reoxcyn's, and to enter an additional award for the fees ASEA and Sorensen reasonably incurred on appeal.

—————